THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TERRY WOITH, Defendant-Appellant.

Fourth District    No. 4—83—0845

Opinion filed August 10, 1984.

David E. Robinson, of Jacksonville, for appellant.

Tim P. Olson, State's Attorney, of Jacksonville (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:
Following a jury trial in the circuit court of Morgan County, defendant, Terry Woith, was convicted of the offense of indecent liberties with a child (Ill. Rev. Stat. 1983, ch. 38, par. 11—4(a)(3)). Defendant was subsequently sentenced to a term of four years' probation, fined $5,000, and ordered to serve a term of one year home confinement.

The principal issue presented for review is whether the introduction at trial of certain hearsay statements made by the victim to her cousin, her mother, and a law enforcement officer constituted plain error (87 Ill. 2d R. 615(a)). Although only the statement to the cousin was properly admissible, we conclude that the doctrine of plain error should not be invoked because of the strength of the evidence in this case and because defendant was not deprived of a fair trial. Defendant also maintains on appeal that (1) his guilt was not proved beyond a reasonable doubt, (2) the trial court abused its discretion in refusing to allow him to introduce certain evidence as to the victim's credibility, (3) the trial judge's conduct in ruling upon the presentation of certain evidence deprived him of a fair trial, and (4) he was denied the right to effective assistance of counsel. We affirm.

Much of the evidence concerning the background of the alleged offense was undisputed. Defendant was a 35-year-old male dentist with offices in Jacksonville and Meredosia. On the morning of August 17,

1983, he examined the 14-year-old victim and her brother in his Meredosia office. Upon completion of the short examinations, he complimented the victim on her eyes and her hair. Defendant testified that he complimented her because she appeared nervous and he thought this would comfort her. He indicated that he would need to speak to their mother about further dental work and asked for and obtained directions to their home. According to the victim, she told defendant her mother would not be home until after 4 p.m. that afternoon. The defendant stated he did not know that the mother would not be home before 4 p.m.

At about 1 p.m. that day, defendant drove to the victim's trailer residence in his van and went to the door. Some children had apparently damaged the wood sign at defendant's office. He testified that he was looking for wood stain on his lunch hour and also went to the victim's house to talk to the children's mother about dental work they needed. The victim met him at the door. Upon learning the mother was not at home, he asked her if she knew where he could get some wood stain. He testified that he asked her if she knew anything about who had been damaging his sign. After a short conversation they both went into his van. She testified he asked her if she would like to see his van. He testified she asked to see the van. The weather was very warm and while in the van, he mentioned something to her about "skinny dipping." He testified that he said it was a good day to do some "skinny dipping." She testified he asked her if she had ever done so.

The defendant and the victim then went into her trailer residence, which was air conditioned. The testimony varied greatly as to what happened in the trailer, but they agreed that they talked about various things including "rock" concerts. He admitted that at one time he put his hand on her shoulder and told her to relax. He maintained that he did this because he felt she was nervous about her dental work and told her that relaxing would help her overcome her fears. He asserted that she was relaxed when he left and that he did not touch her breasts nor touch her in any other inappropriate manner.

The victim testified that when defendant put his hand on her back he started rubbing her back up and down and told her it was too bad she was not a little older because they could "go out." She further testified that they conversed about "rock" concerts for a while and then he started to leave. According to the victim, as she followed him to the door, he "turned around quickly and grabbed [her] on the side of [her] breasts." She said that he obtained a firm grip on her breasts and moved his hands in a circular motion. She further testified that

he told her that her hair "smelled nice" and asked if she was nervous about going to his office. She stated that she answered that she was and he told her that if she would shut her eyes and think about a pleasant place it would relax her. During this time, he continued to massage her breasts. She testified that when he relaxed his grip, she walked away. She said that he then told her that he hoped that she would be a good patient and a good friend and then left.

The victim's 16-year-old cousin testified that during the afternoon of August 17, 1983, the victim came to her house "shaking real bad like she was scared to death" and stated that defendant had put his hands on her breasts. The victim's mother testified as follows. She worked at Passavant Hospital in Jacksonville and got home at approximately 4 p.m. on August 17. She testified that the victim told her that defendant (1) came to their trailer looking for wood stain, (2) showed her the inside of his van, (3) came into her house and had his hands on her back, (4) touched her breasts, and (5) commented that it was too bad that the victim was not a little older. Sergeant Jerry Lieb of the Morgan County Sheriff's department testified that he interviewed the victim the day after the episode. He testified that the victim described to him a version of the events of the previous day which was substantially the same as that to which she had testified at trial. The major thrust of defendant's position on appeal is that the admission of these statements constituted plain error.

The State's case was supported by the testimony of defendant's secretary-receptionist and his dental assistant. During the noon hour of August 17, 1983, they had observed that defendant's van was parked by the victim's trailer. The secretary-receptionist testified that the defendant came back to the office late for his 1:30 p.m. appointment and stated that he had been looking for wood stain, whereupon she said to him, "Some of us weren't born yesterday." According to the two witnesses, defendant did not respond and said nothing about being at the victim's residence until later, after they had told him they knew where he was. The defense was supported by the testimony of a dentist of 30 years' experience who stated that he had examined the victim and her brother's dental records and, in his opinion, the records did show that the children needed dental treatment.

The State's case was very strong and fully sufficient to justify the jury's determination that defendant's guilt was proved beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.) The victim's testimony was reasonably clear, considering the embarrassment that relating the events was likely to cause. Her version of the events remained reasonably consistent. The

defendant's contention that she fabricated her testimony so that her mother would not chastise her for being "precocious" was weak. If she had wished to avoid her mother's condemnation, she would likely have said nothing about the defendant's coming to the trailer. By relating the story she risked condemnation for permitting the defendant to enter the trailer. However, the greatest strength of the State's case was the lack of credibility of the defendant's explanation of the occurrence.

The jury could well have believed the victim's testimony that she told defendant at the office that her mother would not be home until late in the afternoon. If defendant knew that, he most certainly did not go to the trailer to further explain the nature of the children's dental problems to their mother. However, even if he thought the mother might be home, his conduct was most unusual. In the course of his professional duties, a 35-year-old male dentist would be most unlikely (1) to go alone into a trailer with a 14-year-old female patient whose attractiveness he had recently complimented, (2) to discuss with her the subject of swimming in the nude, and (3) to then engage in some sort of procedure to relax her which involved his placing his hand on her back. The circumstances strongly indicated that he went to her trailer with an intent to make advances to her. The inference that he did, in fact, make the advances toward her to which she testified is corroborated by the testimony of one of defendant's staff that he was evasive in explaining his whereabouts during the early afternoon.

We now turn to the problems created by the introduction into evidence of the statements by the victim to her cousin, her mother, and Sergeant Lieb. As objection was made at trial only to the relevancy concerning the statement to Sergeant Lieb and error was not claimed in a post-trial motion as to any of the evidence, any error in admission of the evidence was waived unless plain error resulted. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

■ If offered to prove the truth of the matters asserted, all of the statements were hearsay. They could not come within the prompt-complaint exception to the hearsay rule because that exception is applicable only to rape cases (*People v. Buckley* (1976), 43 Ill. App. 3d 53, 356 N.E.2d 1113), prosecutions under section 11—4(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 11—4(a)(1); *People v. Darby* (1978), 58 Ill. App. 3d 294, 374 N.E.2d 229), and to sex offenses where, unlike here, the victim is under 12 years of age. (See Ill. Rev. Stat. 1983, ch. 38, par. 115—10.) Another possible exception to the hearsay rule would be the excited-utterance exception.

822

That exception requires (1) an occurrence sufficiently startling to produce a spontaneous and unreflected statement; (2) absence of time to fabricate; and (3) a statement which relates to the circumstances of the occurrence. (*People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164; *People v. Parisie* (1972), 5 Ill. App. 3d 1009, 287 N.E.2d 310; E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 803.3, at 427 (3d ed. 1979).) Here, the occurrence was sufficiently startling to produce a spontaneous and unreflected statement and the statements related to the circumstances of the occurrence. The problem was the length of time between the event and the statements.

The State admits that the statement to Sergeant Lieb was too remote in time from the event to qualify. The victim's statement to her mother was also too remote. It was not made until several hours after the incident and made while the victim, her mother, and her brother were eating their evening meal. The victim's brother had mentioned that defendant had been flirting with the victim during their visit to his office. The victim made the statement in response to what her brother had said. There was no showing that she continued to be excited and she had several hours to fabricate.

The statement allegedly made by the victim to her cousin presents a much closer question. Her cousin testified that the victim was shaking a great deal when the victim came to her house. The exact amount of time that had elapsed since the incident was not made clear. The victim testified that after defendant left the trailer, she sat on the couch trying to calm herself, finished doing some dishes, and then walked over to her cousin's house. The evidence did not show that she made the statement immediately upon arriving at her cousin's house.

In *People v. Jackson* (1956), 9 Ill. 2d 484, 138 N.E.2d 528, a lapse of one hour between a stabbing and an utterance was held to require exclusion. The declarant there was severely wounded. A situation somewhat like that here occurred in *People v. Stewart* (1970), 130 Ill. App. 2d 623, 264 N.E.2d 557. After an incident wherein she claimed to have been kidnapped, a victim returned to a laundromat, gathered clothes she had left there, drove to her home, washed, and checked her children before relating the details to an aunt. The *Stewart* court determined that the statement was not an excited utterance and the conviction was reversed. In *People v. Walton* (1976), 43 Ill. App. 3d 74, 356 N.E.2d 1131, the court determined that a statement made by complainant in a rape case to a doctor in a hospital 1 ½ hours after the alleged incident did not constitute an excited utterance. In neither *Jackson, Stewart,* nor *Walton* did the opinion indicate that the victim

was still excited at the time of the utterance.

■ Despite the cousin's testimony indicating that the victim was highly excited and nervous when the victim related the incident to her, we conclude that the lapse of time between the event and the statement was such that the victim had time to fabricate. Had the victim gone directly to her cousin's house after the event, our ruling might be different.

■ The other possible grounds for admitting the statements would be as prior statements consistent with trial testimony. Such testimony is admissible only to rebut an express or implied charge by an opponent that a witness has a motive to testify falsely or the testimony of the witness is a recent fabrication. In order to be admissible to negate a motive to fabricate, the statement must have been made prior to the existence of the motive. (*People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.) Here, the only inference of motive for the victim to falsify that was raised by the defense was the contention previously stated that the victim fabricated the story so that her mother would not criticize her for being too forward with the defendant. This motive could have arisen at the supper table when the victim's brother mentioned that the defendant had flirted with the victim. Thus, the victim's previous statement to her cousin, which was consistent with her testimony at trial, had some probative value in negating that defense contention and was admissible for that purpose.

■ Regardless of the impropriety of the introduction of the statements of the victim's mother and Sergeant Lieb, we find no plain error to have occurred. In *People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164, evidence was introduced, without defense objection, that between 3½ and 4½ hours after a rape, the victim told her sister, the sister's husband, and a police officer that she had been raped and gave details of the incident. The court held that the statements were not excited utterances because of the time lapse and did not meet the corroborative complaint exception because the testimony had related the victim's version of the details of the occurrence. However, because the declarant victim had testified and was subject to cross-examination and because everything of significance in the statements was corroborated by the victim's testimony, no plain error occurred.

Defense counsel on appeal notes that the jury, while deliberating, twice asked for a transcript of Sergeant Lieb's testimony. One inquiry indicates that the jury was interested in the position in which the victim said she was standing when "the alleged fondling occurred." No transcript was given to the jury as none was available. Defense counsel argues that this indicates the importance of Sergeant Lieb's hear-

say testimony. However, the jury could have been interested in Sergeant Lieb's version of the victim's statement merely to see whether the statement was consistent with her testimony at trial. In any event, the supreme court stated in *People v. Carlson* (1980), 79 Ill. 2d 564, 576, 404 N.E.2d 233, 239, that the plain error exception is applicable to cases where the evidence is closely balanced or the error is of the magnitude to deny the defendant a fair trial. As we have indicated, we deem the evidence in support of the conviction to be very strong. This strength results from the weakness in defendant's attempted explanation of the occurrence. Under the precedent of *Robinson*, we do not find the presentation of the hearsay testimony to have deprived defendant of a fair trial.

The question of whether the court improperly prevented the defense from impeaching the victim's credibility arose when the defense was cross-examining her about the conversation at the dinner table the evening of the offense. The defense attempted to show that the victim had a motive to maintain that defendant had made advances to her so that her mother would not accuse her of being too forward or precocious. The defense asked the victim if she had trouble communicating with her mother. After the State's objection, the court permitted the defense to cross-examine the victim out of the presence of the jury. She then testified that her mother was angry with her because she was dating a "rock" singer. The victim admitted that when her brother mentioned that defendant had been flirting with her, she was reluctant to say anything that would reflect badly on her, but that she told the truth to her mother at that time.

The court ruled that the defense could cross-examine the victim "within limits concerning her fear of her mother's disapproval" and that the defense could argue to the jury that there was reason for her to tell "less than the truth." However, the trial court stated that the defense could not ask her about prior misbehavior on her part, which she had denied on *voir dire*, unless the defense was in a position to offer connecting testimony. The court had previously indicated that the defense could not call the victim's mother, her cousin, or another witness who defense counsel stated might know something about the victim's prior misbehavior, because the defense had violated a discovery request concerning these witnesses.

We find no error to have occurred. The trial court properly proceeded with caution. It permitted reasonable cross-examination concerning the child's concern about the mother's disapproval and indicated that the defense could make proper argument. The defense could not guarantee connecting evidence in regard to any more exten-

sive interrogation. Furthermore, as the court mentioned, the question of who might have been the more aggressive in the victim's encounter with the defendant was not of great importance. Because of the victim's age, the conduct alleged would have constituted a crime by defendant regardless of her willingness or consent. The trial court did not breach its discretion in regard to the defense attempt to impeach the victim.

■ The defendant contends that because the trial court on five occasions *sua sponte* admonished defendant not to testify in a narrative fashion and did likewise two times with the dentist who testified concerning the children's dental records, the court exhibited bias against defendant. (See *People v. Garines* (1924), 314 Ill. 413, 145 N.E. 699.) He notes that, on the other hand, Sergeant Lieb was permitted to give a narrative answer that covered four pages in the transcript. We again find no breach of discretion. The question presented to Sergeant Lieb called for a narrative response. No error resulted.

■ Defendant's principal point in support of his contention that he was deprived of his right to effective assistance of counsel arises from the failure of his trial counsel to properly preserve for review any of the error in the admission of the victim's hearsay statements previously discussed. Representation by counsel is constitutionally deficient if the trial counsel's incompetence produced substantial prejudice to a defendant without which the result of the trial would probably have been different. (*People v. Royse* (1983), 99 Ill. 2d 163, 457 N.E.2d 1217.) Because of the strength of the case of the State, we conclude that results of the trial would not likely have been different had the statements been excluded. Furthermore, defense counsel may have been exercising strategy in permitting the statements, particularly that to the victim's mother, to be introduced. *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.

Defendant complains of trial counsel's decision not to request the court to submit to the jury the question of whether defendant was merely guilty of the included misdemeanor offense of contributing to the sexual delinquency of a minor. (Ill. Rev. Stat. 1983, ch. 38, par. 11-5.) That decision could likewise have been one of strategy. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) Defendant also complains that counsel took no action when the victim returned sobbing to the witness stand after the previously described *voir dire* examination. The best procedure to take under circumstances of that nature is clearly a matter of trial strategy. We also find no incompetence in regard to the trial counsel's presentation of evidence or cross-examination.

The record does not indicate that defendant was deprived of his right to effective assistance of counsel.

We affirm because no reversible error occurred.

Affirmed.

MILLS, P.J., and TRAPP, J., concur.