THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE LESLIE RAY POWELL, Defendant-Appellant.

Fourth District No. 4—85—0266

Opinion filed November 5, 1985.

Daniel D. Yuhas and Deborah L. Rose, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Robert J. Biderman, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant was convicted by a jury of the offense of aggravated criminal sexual abuse (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—

16(c)(1)) and was sentenced to seven years' imprisonment. He appeals from the judgment of the circuit court of Vermilion County, arguing (1) he was not proved guilty beyond a reasonable doubt, and (2) he was denied a fair trial by the admission of testimony on the details of the report by the eight-year-old victim to a deputy sheriff and to her mother, as this testimony exceeded the scope of the hearsay exception codified in section 115—10 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 115—10). We affirm.

Defendant was charged with committing this offense upon an eight-year-old child during the early morning hours of August 15, 1984. The victim of the offense was spending the night with her girlfriend, the daughter of Mrs. Sanders. The Sanders lived in a trailer next to the Pit Stop Tavern, where Mr. and Mrs. Sanders worked. The defendant is the nephew of Mrs. Sanders and was living with his grandmother, Mrs. Hoskins, during the summer of 1984. The victim had previously seen the defendant on one occasion, at the residence of Mrs. Hoskins, and had been told who he was by her friend, the Sanders' daughter. On the night of the offense, the defendant had 10 or 12 Royal Crown and Coke drinks before he became involved in an altercation with the victim's stepfather. He had several more drinks, became involved in another altercation with the victim's stepfather, and left the tavern.

Mrs. Sanders had been working at the Pit Stop the night of August 14, 1984, while Mr. Sanders stayed at the trailer with his stepdaughter and the victim. When the defendant became involved in the first altercation, Mr. Sanders was called to the bar, where he remained until sometime after the second altercation. He returned to the trailer about four minutes after someone came into the bar and told him they had seen someone go in behind his shed and into the trailer.

According to the victim, after she and her friend went to sleep on a blanket in the living room in front of the television, covered by a sheet, defendant entered the trailer and pulled the covers down past her knees. She was only wearing underpants. She and her friend awoke and told defendant to leave, which he did, and they went back to sleep. The victim testified she was later awakened by the defendant moving his hand on her leg. According to the victim, defendant moved his hand into her underwear through the leg, and touched the outside of her "private," described as the place she went to the bathroom. She said she used a loud "man's" voice to tell him to leave, and that he went over and stood by a freezer and sat on a stool and stared at her until after she again told him in a "man's" voice to

leave, and he left. She said she then woke her girlfriend and told her "to call her mom or I would because Leslie had just been in there, and he had touched my private." The Sanders' daughter called her mother, and thereafter Mrs. Sanders returned to the trailer, the victim told her what had happened, and Mrs. Sanders made a number of phone calls. The police arrived, and the victim told them what happened. The victim told her mother what happened when she came to pick her up the following morning.

The victim testified that before she and her friend went to sleep, she saw a shadow on a small square window by the door. Later, she saw the defendant at a big square window, and he asked her if there was anyone in the trailer besides herself and the Sanders' daughter. She told him there was not, and he said "okay," and then stared at her. Since his staring bothered her, she told him to leave, which he did. She testified that on looking at the defendant through the window, he was wearing a yellow and white shirt and blue pants; she could not tell what kind of shoes he had on, because the window "just showed the top of him." She testified that when he touched her he was wearing a yellow and white shirt, cut-off pants, and "blue and white Converse shoes." She saw the shoes after he touched her, when he stared at her from near the freezer. The victim demonstrated the offense in front of the jury with dolls.

The defendant testified that after he left the bar, the girls called him over from the trailer window and asked him what was going on at the Pit Stop, since Mr. Sanders had been called away from the trailer. He "told them what had happened," and then felt ill, and went to a cornfield behind the trailer and was sick. He testified that he must have lain down, because he remembered getting up and going back to the trailer to see if he could get a ride home. He knocked on the door and looked in, saw the girls asleep, walked back out and closed the door, and sat on the steps. According to the defendant, about that time Mr. Sanders came around the porch and asked him what he was doing, and he said he was just sitting there. Defendant testified that Sanders said his wife, defendant's aunt, wanted to talk to him, and about 15 minutes later his Aunt Linda accused him of fondling the victim. Defendant testified that he told his aunt she was crazy and took off walking, returning to his grandmother's.

Defendant testified that on the night of the alleged offense, he was wearing gray dress slacks, a yellow and white shirt, and blue Nerfs, jogging shoes. He denied telling the officer that interviewed him on August 15, 1984, that he went to the cornfield twice, saying he told the investigator he went to the trailer twice. He testified that he

remembered "more or less everything that happened," but wouldn't "testify to any sequence of events." Asked if he had covered one of the girls, defendant answered, "No, sir, not to my recollection." Asked if he had told his grandmother that one of the girls was uncovered and that he had covered her, defendant said he had told his grandmother that the girls were lying in the living room, but not that he had covered one girl. He denied touching the girls; the defendant acknowledged he had been convicted of misdemeanor theft in 1983.

Mrs. Hoskins testified that the defendant had told her he guessed he was "in a mess of trouble," and did not remember exactly what had happened. She said she had asked him if he had touched the little girl in any way, and he had answered, " 'I can't remember. She was uncovered, and I reached down and pulled the covers up over her.' "

The Sanders' daughter testified that she remembered the night the victim had stayed with her when claims were made about the defendant being in the trailer. She remembered calling her mother to have her come over to the trailer because of what the victim told her. She testified that she did not see the defendant in the trailer that night. She said she did not remember talking to a deputy on the night of the alleged offense, but said she thought someone did come out and talk to her and the victim. Asked whether this was after her mother called the police, she answered affirmatively. She said she did not remember telling a deputy at that time that she had seen the defendant in the trailer but he had not touched her.

Deputy Nargelenas testified that in the early morning hours of August 15, 1984, he spoke to the Sanders' daughter and she told him she had seen the defendant in the trailer, but he had not touched her and she had not seen him touch the victim. Nargelenas also testified that when he arrived at the trailer, the victim told him the defendant had been in the trailer while she and her friend were asleep on the floor in the front room, that she woke up, and defendant put his hand down the front of her pants and touched her.

The victim's mother testified that when she picked her daughter up the morning of August 15, 1984, she said, " 'Leslie Powell had come into the trailer and had put his hand into her pants and touched her private parts.' "

Officer Cannon testified that when he took the defendant's statement on August 15, 1984, the defendant said that after leaving the bar the night before, he fell asleep in the cornfield twice. After waking up in the cornfield the first time, he walked over to the Sanders' trailer and went inside through the back door. He saw the two girls asleep on the floor, but did not disturb them in any way, and

left. Cannon said the defendant told him he returned to the cornfield and fell asleep again, and when he woke up later and went back to the trailer, he was confronted outside by the Sanders and accused of attempting to molest the victim. According to Investigator Cannon, the defendant told him that the charges were so ridiculous that he had not even bothered to answer them, but instead turned around and left and went home.

It is well settled in Illinois that when a conviction for taking indecent liberties with a child depends upon the testimony of the prosecuting witness, and the defendant denies the charge, there must be substantial corroboration of the prosecuting witness by some other evidence, fact, or circumstance in the case; or the testimony of the prosecuting witness must be otherwise clear and convincing. (*People v. Pazell* (1948), 399 Ill. 462, 467, 78 N.E.2d 212, 214.) The testimony of the complaining witness need not be crystal clear and perfect in order for her testimony to be clear and convincing. (See *People v. Novotny* (1968), 41 Ill. 2d 401, 411-12, 244 N.E.2d 182, 188; *People v. Newbern* (1974), 18 Ill. App. 3d 532, 540, 310 N.E.2d 42, 48.) The credibility of that witness, as other witnesses, is a question for the trier of fact, and its determination is entitled to great weight. (*People v. Catranis* (1946), 392 Ill. 580, 583, 65 N.E.2d 348, 350; *People v. Bullock* (1976), 40 Ill. App. 3d 672, 674, 353 N.E.2d 35, 36.) A reviewing court will not reverse a conviction unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to the defendant's guilt remains. *People v. Yates* (1983), 98 Ill. 2d 502, 518-19, 456 N.E.2d 1369, 1377-78.

First, we have carefully reviewed the record and there was substantial corroboration of the victim's testimony by other evidence, facts, and circumstances. (*People v. Pazell* (1948), 399 Ill. 462, 78 N.E.2d 212.) Section 115—10 of the Code (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 115—10) provides:

"In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child that he or she complained of such act to another; and

(2) testimony by the person to whom the child complained that such complaint was made *in order to corroborate the child's testimony.*" (Emphasis added.)

The testimony of Deputy Nargelenas, and of the victim's mother, that

the victim had complained of this act corroborated her testimony. The Sanders' daughter testified that the victim had awakened her that night to call her mother, complaining of the act. The defendant's own testimony was that he was confronted by the Sanders before he went home during the early morning hours of August 15, 1984, and accused of fondling the victim. *In toto*, this evidence provided substantial corroboration for the young victim's testimony. *People v. Catranis* (1946), 392 Ill. 580, 583, 65 N.E.2d 348, 349-50; *People v. Woith* (1984), 126 Ill. App. 3d 817, 821, 467 N.E.2d 614, 618.

In addition, the victim, her mother, the defendant, and his grandmother, all testified the defendant wore a yellow and white shirt on the night of the alleged offense; the victim and the defendant testified he wore a blue jogging-type shoe. The victim's testimony was clear that she was unable to see the defendant's shoes when he talked to her through the window of the trailer, and so was her explanation of the circumstances by which she saw his shoes.

■ Further, the grandmother, Mrs. Hoskins' testimony was that the defendant told her he had been in the trailer, saw one of the girls uncovered, and covered her—in clear contrast to defendant's trial testimony—and this had corroborative value. Investigator Cannon testified that the defendant told him he did not react when Mrs. Sanders accused him of molesting the victim the night of the alleged offense, but merely walked away and went to his grandmother's. Silence has some corroborative value. When a person is accused in the presence of others and the tendency of a reasonable man would be to deny the accusation, the silence of the accused is admissible as an implication of guilt because it gives rise to an inference of the truth of the accusation. (*People v. Norman* (1963), 28 Ill. 2d 77, 79, 190 N.E.2d 819, 821.) By contrast, defendant testified at trial that he told his aunt she was crazy when she confronted him with this accusation, and then left and walked to his grandmother's. The defendant told three different stories. The case required the jury to determine credibility questions, and the record here does not raise a reasonable doubt as to defendant's guilt.

■ Contrary to defendant's argument, there was no proof of an ulterior motive for the victim's testimony. His testimony that he told the two girls "what had happened" did not supply such a motive. Defendant argues that the fact that Mrs. Sanders did not testify casts doubt on the validity of the victim's allegation, since she was the first adult to whom the victim reported the alleged offense. Defendant relies on *People v. Everhart* (1974), 22 Ill. App. 3d 727, 317 N.E.2d 720. *Everhart* is distinguishable, since the testimony of the complain-

ing witness in that case was totally uncorroborated. Other alleged inconsistencies raised by defendant involved matters going to the weight of evidence or credibility, and do not raise a reasonable doubt as to his guilt.

■ ■ Defendant next argues that statements by Deputy Nargelenas, as well as the victim's mother, as to what the defendant actually did, *i.e.*, the details of the alleged offense, should not have been admitted. Defendant relies on *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 1068-69, 469 N.E.2d 1137, 1145-46, wherein this court concluded that the admission of the testimony by the victim's mother, concerning details of the victim's complaint and the name of the person who allegedly committed the severe attack on him, was error and not within the scope of section 115—10 of the Code. *Leamons* pointed out that the case law prior to passage of section 115—10 forbade recitation of the details of the complaint, while permitting corroborative testimony as to the *fact* of the complaint under the "prompt complaint" exception to the hearsay rule. (*People v. Damen* (1963), 28 Ill. 2d 464, 472-74, 193 N.E.2d 25, 30-31.) Prior to the enactment of section 115—10, the "prompt complaint" exception was held *not* applicable in cases of indecent liberties with a child. See *People v. Romano* (1923), 306 Ill. 502, 504, 138 N.E.2d 169, 170; *People v. Gillman* (1980), 91 Ill. App. 3d 53, 59, 414 N.E.2d 240, 244; *People v. McKee* (1977), 52 Ill. App. 3d 689, 692, 367 N.E.2d 1000, 1002-03; *People v. Hernandez* (1980), 88 Ill. App. 3d 698, 704-05, 412 N.E.2d 572, 577.

The State has supplied as supplemental authority the decision of a sister appellate court in *In re C.K.M.* (1985), 135 Ill. App. 3d 145, 149-50, 481 N.E.2d 883, 886-87. In that case, the victim of the offense of attempted rape was a six-year-old girl. The victim's mother testified that after she picked her daughter up at the babysitter's, the child went into the bathroom and started crying, and in response to her question of why, the child named the defendant and told her what he had allegedly done. The mother's testimony included not only the fact of the complaint, but some details thereof, including the child's identification of the defendant and description of the act. The reviewing court stated that "the mother's testimony consisted of simply repeating the child's words in complaining of the attempted rape." (*In re C.K.M.* (1985), 135 Ill. App. 3d 145, 149-50, 481 N.E.2d 883, 887.) The court in *C.K.M.* found, however, that a detective's testimony of the details of the attempted rape as reported to him by the minor victim, not quoted in the opinion, appeared to go beyond the fact that a complaint was made. Nevertheless, the court found the improper admission harmless, as the facts related by the detective were strongly

established by other competent evidence. The minor victim had testified to substantially everything the detective corroborated in his testimony.

Although *C.K.M.* appears to hold proper the admission of details of the offense in testimony by the victim's mother, we disagree; further, we clarify the rule stated in *Leamons*: Section 115—10 of the Code permits an expansion of prior case law only to the extent that the "prompt complaint" exception to the hearsay rule is extended to the prosecutions for a sex act perpetrated on a child under age 13; the statutory provision does not, however, *expand* the "prompt complaint" exception so as to permit others, apart from the victim, to testify as to all details of the complaint made. Insofar as the testimony of the deputy and the victim's mother included a description of the conduct which was the offense, it did not amount to such a recitation of the "details" of the complaint as to exceed the prompt complaint exception as generally described in *Damen*. In order to corroborate the fact of the complaint, such testimony must necessarily include some detail. The complaint herein could hardly have been related with less descriptive detail on the conduct, one act, which was the offense.

 However, insofar as the testimony of the deputy and the victim's mother included the fact that the victim had identified the defendant as the perpetrator when she made her complaint, it did exceed the scope of the exception. Nevertheless, the error in its admission was harmless since the defendant's identity was established by other competent evidence, including the victim's testimony earlier in the trial. (*People v. Leamons* (1984), 127 Ill. App. 3d 1056, 469 N.E.2d 1137; *In re C.K.M.* (1985), 135 Ill. App. 3d 145, 481 N.E.2d 883.) There was no dispute as to who the person was who was in the room; the question was as to what occurred.

Affirmed.

GREEN, P.J., and MORTHLAND, J., concur.