*In re* M.M., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. M.M., Respondent-Appellant).

Second District No. 2—86—1032

Opinion filed June 21, 1988.

G. Joseph Weller and Robert C. Cooper, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (John X. Breslin, William L. Browers, and Terry A. Mertel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

A petition for adjudication of wardship was filed against M.M., a minor, alleging that the minor should be adjudicated a delinquent, pursuant to section 2—2 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—2), for having committed the offense of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(2)(i)) and two counts of aggravated criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(c)(2)(i)). Following an adjudicatory hearing, the trial court found the minor responsible for aggravated criminal sexual assault and one count of aggravated criminal sexual abuse. The court dismissed the second count of aggravated criminal sexual abuse as a lesser included offense of the aggravated criminal sexual assault charge. After a dispositional hearing the court placed the minor on probation for 15 months. The minor appeals, contending that the trial court committed reversible error when it allowed into

evidence details of one of the victim's corroborative complaint.

At the adjudicatory hearing conducted on September 26 and 29, 1986, the mother of one of the victims, N.F. (hereinafter Nick), testified that Nick was born on September 2, 1980. She related that during November and December of 1985 M.M. frequently baby-sat for her son. On cross-examination Nick's mother stated that Nick never complained to her that M.M. had done anything of a sexual nature to him. Nick related sexual incidents only after his mother asked him about them.

Six-year-old Nick testified that he presently lives in Kenosha, Wisconsin, with his parents and sister but that he used to live in Park City across the street from M.M., who often baby-sat Nick. Nick stated that on these occasions M.M. "would suck on my wiener." Nick used two dolls to demonstrate what M.M. would do. Nick related that this would happen "a lot" in his mom's bedroom on her waterbed and that when M.M. finished sucking on Nick's "wiener," M.M. would pull up Nick's pants.

Nick stated that he did not tell his mother about these incidents until after he had told his "stepdad," J.M. Nick testified that he did not know why he had told J.M. Nick recounted, "I just came up with it. I just thought of it and then I told him."

Nick testified that M.M., K.W. (hereinafter Katie), and he used to play together all the time. Nick stated that M.M. never touched or sucked Nick's "wiener" when Katie was present except one evening when M.M. baby-sat Katie and him, and they told scary stories. Nick did not remember M.M. sucking his "wiener" on that evening because he was asleep, but Katie told Nick about it one day when they were playing. Nor did Nick see M.M. do anything to Katie on that same night. Nick stated that a "wiener" is the same thing as a penis.

Sometime later when Nick was wrestling with J.M., he told J.M. about M.M. sucking his "wiener." Nick related that J.M. had not asked him about this conduct and that Nick did not recall any reason for telling J.M. at that time. Nick also stated that he did not know such conduct was "wrong" until his mom and dad told him it was wrong.

J.M. testified that in mid-July 1986 Nick and he were wrestling in the family room of their home. At the time, Nick was dressed only in his underwear. While wrestling, J.M. grabbed Nick by the back of his undershorts and they came down. Nick started laughing and said to J.M., "[T]hat's what [M.M.] does to me." J.M. then asked, "[W]hat do you mean he does that to you?" Nick replied, "[H]e takes my pants down. *** [H]e pulls my pants down and he sucks on my wiener."

Defense counsel objected to the admissibility of J.M.'s conversation with Nick on the basis that it constituted hearsay not within the corroborative complaint exception. (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.) The court overruled defense counsel's objection, stating that the testimony fell well within the statutory exception. J.M. recounted that Nick told him that M.M. performed this sexual conduct every time he baby-sat for Nick.

Katie testified that she was born on December 8, 1977, and attended third grade. She lives with her mother across the street from M.M.'s home. Nick also used to live across the street from her.

Katie recalled that around Halloween of 1985, M.M. baby-sat Nick and her at Nick's mobile home. The three of them were lying on a blanket on the floor telling scary stories. M.M. was lying in the middle between Katie and Nick. After each of them told a scary story, Nick fell asleep. Katie also fell asleep but woke up and saw M.M. touching Nick in "the private part."

Katie used two dolls to demonstrate that Nick's pants were down and that M.M. had placed his hand in the area of Nick's penis. Katie stated that she pretended to be asleep and that M.M. then started touching her in the same place as Nick, but on top of her pajamas, moving his hand in a circular motion. M.M. stopped touching her when the phone rang. About two minutes later, Katie's mother arrived, and she left.

Katie testified that except for that one instance, M.M. never touched her in her private parts. Katie stated that she did not tell her mother about this incident because she thought she might get into trouble. Katie believed M.M. had done something wrong because he should not have touched her in her private parts. About three weeks later, Katie told Nick that M.M. had touched him, and Nick did not respond. Katie did not tell Nick that M.M. had also touched her.

On cross-examination Katie denied that M.M.'s conduct on the night of the incident was a dream. Katie related that she had had dreams that M.M. was touching her private area, but, on redirect, it was brought out that these dreams did not occur until after the night M.M. had touched her.

Katie's mother testified that in mid-November of 1985 M.M. baby-sat for both Katie and Nick in the mobile home of Nick's mother. Katie's mother related that following a phone conversation with Nick's mother in mid-July 1986, she spoke with Katie regarding unpleasant touches. Defense counsel objected to the admissibility of hearsay details of a corroborative complaint. The court sustained defense counsel's objection, stating:

"I think the exception is one that's created on the basis of somewhat analogous to a spontaneous utterance where the child voices the complaint to the parents or to another adult, rather than the child coming under inquiry or examination by someone, and then pursuant to that examination making statements or remarks.

\* \* \*

I think the statute talks in terms of complaints. It doesn't talk in terms of responses to questions or examination."

Sandra Sanchez, a neighbor of M.M. and Nick, testified on the minor's behalf. During the summer of 1986, Sanchez observed Nick playing with her four-year-old niece. When Nick started to lift her niece's dress, Sanchez intervened. No other contact occurred between Nick and Sanchez's niece.

The minor, 14-year-old M.M., testified on his own behalf that he baby-sat Nick two or three times a week for over a year, usually at Nick's house. M.M. denied having any sexual contact with Nick. He stated that he never touched or sucked Nick's penis. M.M. recounted that he also frequently baby-sat Katie but not as often as Nick. The minor denied any sexual contact with Katie, stating that he never touched her vaginal area.

Following arguments by counsel, the trial court found M.M. to be responsible for the offense of criminal sexual assault committed against Nick and responsible for the offense of criminal sexual abuse committed against Katie. On its own motion, the court dismissed the other count of aggravated criminal sexual abuse committed against Nick as a lesser included offense of aggravated criminal sexual assault.

At a dispositional hearing conducted on October 15, 1986, the court found that M.M. should be adjudicated a delinquent minor. The minor was made a ward of the court and placed on 15 months' probation. Additionally, he was ordered to participate in a sexual offenders' treatment program.

In this court the minor maintains that the trial court erred when it allowed into evidence, in violation of section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—10), details of one of the victim's corroborative complaint. Specifically, the minor complains that the trial court, over the minor's objection, erroneously allowed J.M., Nick's stepfather, to introduce hearsay details of Nick's complaint made approximately six months after the charged incidents and only in response to J.M.'s questioning. The minor maintains that the court's decision was not only improper but also contra-

dictory of its subsequent ruling which barred Katie's mother from testifying as to hearsay details of victim Katie's complaint.

■ Section 115—10 of the Code of Criminal Procedure of 1963 provides:

"In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child that he or she complained of such act to another; and

(2) testimony by the person to whom the child complained that such complaint was made in order to corroborate the child's testimony." (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.)

In the instant case the minor, M.M., was alleged to have sexually assaulted Nick by committing an act of fellatio and sexually abusing the other victim, Katie, by touching her vaginal area. At the adjudicatory hearing, Nick's stepfather, J.M., was permitted to testify concerning Nick's complaint to J.M. about M.M.'s actions. It is the minor's position that the trial court erred in allowing this testimony because the statements testified to were made in response to questioning by J.M.

However, we are in agreement with the State that the minor has waived this issue on appeal by cross-examining J.M. about Nick's statements. When an accused objects to certain testimony on direct examination, but then pursues a similar line of questioning on cross-examination, any error is thereby waived for purposes of appeal. (*People v. Gully* (1986), 151 Ill. App. 3d 795, 799; *People v. Davis* (1984), 130 Ill. App. 3d 41, 51.) Although M.M. objected to Nick's statements to J.M., the record shows that the minor specifically cross-examined J.M. regarding those statements and, therefore, we consider this issue to have been waived. Nevertheless, even if not waived, the court did not act improperly in permitting the testimony at issue.

To fall within the corroborative statement exception to the hearsay rule of section 115—10, the victim's complaint must be spontaneous and not made as a result of a series of questions to which answers are given. (*In re C.K.M.* (1985), 135 Ill. App. 3d 145, 149.) The minor contends that Nick's statements to J.M. were not spontaneous but elicited in response to J.M.'s questioning and, therefore, the court erred in admitting the remarks into evidence. Additionally, the minor maintains that the admission of these remarks was contrary to its subsequent ruling that barred testimony by Katie's mother as to hearsay details of Katie's complaint.

We first note that the trial court's ruling disallowing the corroboration by Katie's mother of her daughter's complaint was proper, as the corroborative statement did not fall within the parameters of section 115—10. The record shows that prior to July 1986, Katie never mentioned to her mother that any touches of a disturbing nature had occurred on the evening when M.M. baby-sat both Nick and Katie at Nick's trailer. Rather, in July Nick's mother apparently contacted Katie's mother regarding allegations of prior sexual contact between M.M. and Nick, and this conversation precipitated inquiry of Katie by her mother. Clearly, under these circumstances any comments by Katie to her mother could not be considered the spontaneous utterances of a child complaining to another since Katie's comments would be in direct response to her mother's inquiry. Thus, the hearsay exception of section 115—10 did not apply to corroboration by Katie's mother of her daughter's complaint, and the court acted properly in disallowing this testimony.

On the other hand, the admission of J.M.'s testimony corroborating Nick's complaint was properly permitted under section 115—10. The testimony showed that while J.M. and Nick were playfully wrestling in the family room of their home, J.M. grabbed Nick by the back of his undershorts causing them to come down. Nick told J.M., "[T]hat's what [M.M.] does to me." At the time Nick volunteered this information, J.M. asked Nick what he meant. Nick responded, "He [M.M.] pulls my pants down and sucks on my wiener." J.M. then asked Nick how often this had happened. Nick responded that it occurred every time M.M. baby-sat him, usually taking place on his mother's waterbed.

It is apparent from the testimony of J.M. that Nick's initial statement did not result from any questioning on J.M.'s part but resulted from J.M.'s accidental pulling down of Nick's underwear. The questioning which did occur came after Nick's initial statement and was directed towards clarifying what Nick meant by his comment. Thus, J.M. asked his questions only after Nick, the complainant, initiated the subject, and the fact that Nick's complaint was then made in response to J.M.'s questions does not mean that the complaint is inadmissible. *People v. Goebel* (1987), 161 Ill. App. 3d 113, 123; *People v. Branch* (1987), 158 Ill. App. 3d 338, 342.

The minor also argues that even if Nick's remarks did not result from J.M.'s questioning, J.M.'s testimony should still not have been permitted because corroborative complaint witnesses cannot testify to all details related to them (see, *e.g.*, *People v. Server* (1986), 148 Ill. App. 3d 888, 900), as M.M. maintains J.M. did at trial. However, cor-

roborative complaint testimony must necessarily include some detail to effectively corroborate the fact that a complaint was made and identify the incident as the one before the court. (*Branch*, 158 Ill. App. 3d at 341; *People v. Powell* (1985), 138 Ill. App. 3d 150, 159.) Here, we do not believe J.M.'s testimony exceeded that boundary, as it merely included a description of the conduct which was the offense. *Powell*, 138 Ill. App. 3d at 159.

▮▮ Nevertheless, to the extent that J.M.'s testimony may have been erroneously detailed, it constituted harmless error. The admission of unnecessary or impermissible detail will be deemed harmless when substantially corroborated by the testimony of a child victim or any other pertinent evidence and the child is present in court and available for cross-examination. (*Server*, 148 Ill. App. 3d at 900.) Any impermissible details, here, were established by the testimony of the victim Nick, who was subject to cross-examination and who neither became confused nor was impeached during that examination. Additionally, Nick corroborated his testimony regarding M.M.'s sexual activities by accurately reenacting that testimony through the manipulation of anatomically correct dolls. J.M.'s testimony merely reiterated Nick's words explaining the sexual assaults by M.M.

▮ Also, the minor's contention that J.M.'s testimony constituted double hearsay because Nick's testimony was a mere recitation of what Katie had told him had occurred on the night M.M. baby-sat both children misrepresents Nick's testimony. The minor was alleged to have sexually assaulted Nick between November 1, 1985, and January 1, 1986. During direct examination Nick testified that M.M. committed the act of fellatio every time the minor baby-sat for Nick and the two were alone. Nick also testified that one incident occurred around Christmas of 1985. Nick never stated on direct that M.M. committed fellatio on the night the minor baby-sat Nick and Katie at Nick's trailer. The events of that particular night arose only on cross-examination. Also, J.M.'s testimony dealt only with what Nick told him M.M. did to Nick every time the minor baby-sat Nick. J.M. did not testify as to what Katie told Nick had happened when M.M. baby-sat both children on the evening near Halloween.

▮ The minor contends that Nick's testimony is substantially weakened by the fact that no medical evidence existed to support Nick's assertions. This contention is clearly without merit since, as the State points out, no medical evidence could corroborate an act of fellatio.

▮ Likewise, we find meritless the minor's assertion that Nick's demeanor at the time he told J.M. of the incidents with M.M. was in-

appropriate for one who had been sexually victimized since Nick was not crying at the time. (See, *e.g.*, *In re A.M.C.* (1986), 148 Ill. App. 3d 775, 783.) That Nick was laughing instead of crying at the time of his comments to J.M. is easily explained by the facts that he and J.M. were playing at the time and that Nick testified that he was not concerned by M.M.'s actions because he did not know they were "wrong."

■ Finally, we note that the minor raises the issue of the promptness of Nick's complaint, pointing out that it was not made to J.M. until approximately six months subsequent to the alleged molestations. We have previously held in *People v. Salas* (1985), 138 Ill. App. 3d 48, as the minor emphasizes, that delay in making the complaint affects the weight, rather than the admissibility, of corroborative complaint evidence as permitted under section 115—10. (138 Ill. App. 3d at 56.) However, we do not agree with the minor's contention that the court's ruling on the minor's objection to J.M.'s testimony and the court's ultimate findings demonstrate that the court failed to properly consider the weight to be placed on Nick's delayed complaint. Rather, we find that the court's rulings indicate that the court found Nick to be both a competent and credible witness who had no reason to fabricate or motive to lie. The record supports the court's conclusions and, therefore, we believe the court properly determined that the weight to be placed on Nick's complaint was not diminished by his delay in making that complaint, especially since, as brought out during Nick's testimony, he would not have complained any earlier since he did not realize that M.M.'s sexual conduct towards him was wrong.

For all of the foregoing reasons, the judgment of the circuit court of Lake County, adjudicating M.M. a delinquent minor and placing him on probation for 15 months, is affirmed.

Affirmed.

LINDBERG, P.J., and WOODWARD, J., concur.