*In re* L.S., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. L.S., a Minor, Respondent-Appellant).

First District (5th Division)   No. 1—86—3434

Opinion filed November 3, 1989.

Randolph N. Stone, Public Defender, of Chicago (Alison Edwards, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Joseph G. Howard, and Kent D. Sinson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PINCHAM delivered the opinion of the court:

The minor respondent was found to be delinquent based on criminal sexual abuse of a five-year-old girl and her three-year-old brother. After a dispositional hearing, respondent was committed to the Illinois Department of Corrections. Respondent appeals, challenging the judgments on the grounds that the trial court improperly relied on inadmissible hearsay, denied her constitutional right to confront her accusers and permitted the State to belatedly tender discovery material favorable to her defense. She also asserts that the evidence was insufficient to prove her guilty beyond a reasonable doubt and that because she was never personally served with summons, the trial court lacked jurisdiction over her and its judgments are void.

Yvette Scott testified that on June 9, 1986, she and her four-year-old daughter, Gianna, were visited at their home by Victoria W. and her children, who are the complainants herein, Carolyn W. and Jonathan W., and the minor respondent. When Yvette went upstairs and Victoria went to the store, respondent remained in the living room with the younger children. Yvette then overheard respondent tell Carolyn to "sit down and be quiet." Carolyn replied that she would tell her mother that respondent was "freaking on John-John." Carolyn came upstairs and told Yvette that respondent "kept messing with her" and that she would tell her mother what respondent had done to "John-John." When Victoria returned from the store, Yvette met her outside the residence and told her what had happened. The two women reentered the house to confront respondent, but she had fled. Yvette added that "freaking" meant having sexual contact.

Victoria W. testified that respondent lived with her from March through June 9, 1986. Beginning in June, respondent worked as a babysitter for Victoria. At 10 a.m. on June 9, 1986, Victoria, her children and respondent visited Yvette Scott at her home. Victoria went to the store but left her children at the Scotts' home. When she returned, Yvette met her at her car and they conversed. They then re-

entered the house to speak with respondent, who had gone. Victoria then attempted to question her children, but Carolyn became "nervous" and refused to respond.

Later that evening, when Carolyn complained that "something was wrong," with her vagina, Victoria examined it and discovered that it was inflamed and infected with pus. She also examined Jonathan's penis and observed that it was inflammed and swollen. The following day, Victoria took the children to their physician. After he examined them and talked with Victoria, he called the police. Victoria gave the officers information regarding respondent. When the doctor's test results were completed, the children were treated with penicillin.

Victoria also testified that when they left the doctor's office, Jonathan stated that respondent "be feeling on me and made me put my mouth on her titty." Victoria stated that the term "freaking" meant to fondle.

Dr. Suckoo Kim testified that, when he examined Carolyn, he observed "redness and discharge" in her genital area, which was an abnormal condition for a five-year-old. He then asked Victoria if any one had touched Carolyn. The child then replied to her mother that respondent had licked her vagina.

The doctor also testified that, when he examined Jonathan, he noted that the boy's penis was swollen and infected. Laboratory tests disclosed that both youngsters had gonorrhea. The doctor added that both children could have contracted the disease from respondent if she had been infected and had physical contact with them as described by the children. He reported the incident to the police.

Dr. Sripathy Rao testified that he was the medical officer for the Juvenile Detention Center and that he had reviewed test results for gonorrhea from a smear and culture taken from the respondent's vagina. According to his review of the medical records, the results of the smear from her vagina were "doubtful" for gonorrhea, but the culture taken on June 13, 1986, was positive. After respondent completed medical treatment, another culture test from her vagina was taken, and the result was negative for the disease. The doctor added that if respondent had gonorrhea in her saliva, she could have communicated it through the saliva on her tongue.

■ We first observe that although respondent has raised several issues for review, we need not address each of them because we conclude that we must reverse the judgments and remand the cause for a new trial based on the erroneous admission into evidence of inadmissible hearsay. The record discloses that when neither of the complain-

ants testified herein, the trial court admitted testimony of Victoria W., Yvette Scott and Dr. Kim under the spontaneous declaration exception to the hearsay rule. The prerequisites for bringing an utterance within this exception to the hearsay rule are: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) that the statement relate to the circumstances of the occurrence. *People v. Poland* (1961), 22 Ill. 2d 175, 181, 174 N.E.2d 864.

■ Although the trial court admitted testimony of Yvette Scott regarding two statements Carolyn made on June 9, 1986, as spontaneous declarations, there was no evidence of when the alleged criminal conduct occurred. Further, the record discloses that both statements were made immediately after respondent had reprimanded Carolyn. Thus, we are unable to make a fair assessment of the trustworthiness of the statements, which may have been made upon reflection and in response to the reprimand or the alleged criminal conduct. *People v. Sephus* (1986), 150 Ill. App. 3d 272, 274-75, 501 N.E.2d 175.

■ Testimony of Victoria W. as to statements made by Carolyn W. and Jonathan W. was also improperly admitted under the spontaneous declaration exception to the hearsay rule. Victoria testified that after Yvette Scott informed her of Carolyn's statements, she attempted to question Carolyn, but that the child became "nervous" and refused to respond. Later that evening, Carolyn complained that "something was wrong" with her vagina. Upon her examination, Victoria observed that Carolyn's vagina was inflammed and infected. Victoria further testified that when she and the complainants left the hospital the following day, Jonathan told her that respondent "be feeling on me and made me put my mouth on her titty."

We believe that the statements purportedly made by the victims to their mother, Victoria W., occurred too long after the alleged criminal conduct to be considered spontaneous. During the interim period between the purported criminal conduct and statements, the complainants had been questioned by the mother, examined by the physician and respondent had fled. Because of the elapse of time and intervening questions and events, we are unable to ascertain what prompted the victims' statements to Victoria, or to eliminate the probability of fabrication. *People v. Sephus* (1986), 150 Ill. App. 3d 272, 274-75, 501 N.E.2d 175; *People v. Johnson* (1986), 149 Ill. App. 3d 128, 131, 485 N.E.2d 596.

■ We apply the same reasoning to the testimony of Dr. Kim as to the statements Carolyn purportedly made to Victoria when the doctor questioned Carolyn at the time he examined her. The record does

not lead us to conclude that the purported statements were prompted by an occurrence sufficiently startling to produce a spontaneous and unreflecting statement.

■ We also observe that the testimonies of Victoria W., Yvette Scott and Dr. Kim were not admissible under section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—10). That provision requires that the complainant testify, that the testimony of the witness to whom the complaint was made be corroborative in nature, or that when the child does not testify, the court make a determination that the child is unavailable as a witness. Further, the testimony of the complainant must be clear and convincing. (*People v. Server* (1986), 148 Ill. App. 3d 888, 894, 499 N.E.2d 1019.) As we have heretofore indicated, neither of the complainants testified in the case before us. However, the prosecutor, not the court, determined that the complainants were unavailable to testify. Additionally, the testimony of the witnesses to whom the complaint was made was not corroborative because the complainants never testified. *People v. Merideth* (1987), 152 Ill. App. 3d 304, 311, 503 N.E.2d 1102; *People v. Johnson* (1986), 149 Ill. App. 3d 128, 132, 500 N.E.2d 657.

In rendering our decision, we are not unmindful of *People v. Hatfield* (1987), 161 Ill. App. 3d 401, 514 N.E.2d 572, and *People v. Bitler* (1986), 146 Ill. App. 3d 477, 497 N.E.2d 477, upon which the State relies for a dissimilar application of the spontaneous declaration exception to the hearsay rule. However, we believe that the analyses found in *People v. Sephus* (1986), 150 Ill. App. 3d 272, 501 N.E.2d 175, and *People v. Johnson* (1986), 149 Ill. App. 3d 128, 500 N.E.2d 657, are the more well reasoned and assure the trustworthiness required by the spontaneous declaration exception to the hearsay rule.

For the reasons stated, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

LORENZ and COCCIA, JJ., concur.