(No. 71449.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lant, v. BARTHOLD ZWART, Appellee.

*Opinion filed September 24, 1992.*

38

HEIPLE and FREEMAN, JJ., dissenting.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb and William P. Pistorius, Assistant State's Attorneys, of counsel), for the People.

Theodore A. Gottfried, State Appellate Defender, of the Office of the State Appellate Defender, of Springfield (Stephen M. Komie, of Chicago, of counsel), for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

The defendant, Barthold Zwart, was charged by information with four counts of aggravated criminal sexual assault. (Ill. Rev. Stat. 1987, ch. 38, par. 12—14.) The defendant's victim, K.B. (hereafter victim), was three years old at the time of the alleged offense. Following a bench trial in the circuit court of Cook County, the trial court found the defendant guilty and entered judgment on two counts of the information. The defendant was sentenced to two seven-year prison terms, to be served concurrently in the Illinois Department of Corrections.

The appellate court reversed the defendant's convictions and remanded the cause for a new trial. The appellate court concluded that the trial court erroneously admitted certain hearsay statements into evidence at the defendant's trial. (208 Ill. App. 3d 407.) This court allowed the State's petition for leave to appeal (134 Ill. 2d R. 315).

The issue for our review is whether the trial court properly admitted certain out-of-court statements which the victim had made concerning the alleged sexual abuse. The State argues that the trial court properly admitted the statements pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—10). Alternatively, the State argues that the statements were admissible pursuant to the common law "spontaneous declaration" exception to the hearsay rule. The defendant responds that the statements were not admissible under either the statutory or the common law exception to the hearsay rule. The defendant also claims that the admission of the statements violated his rights under the confrontation clause of the sixth amendment to the United States Constitution (U.S. Const., amend. VI) and article I, section 8, of the Illinois Constitution (Ill. Const. 1970, art. I, §8). We agree with the appellate court that the statements were not admissible under section 115—10 of the Code or under the "spontaneous declaration" exception to the hearsay rule.

## FACTS

The testimony introduced at the defendant's trial established the following facts. The defendant, a 60-year-old man, knew the victim's mother, Maria. Maria had three children: a nine-year-old son (Ryan), the three-year-old victim, and a two-year-old daughter (Nicole). Maria is divorced from the children's natural father. In March or April of 1988, the defendant began baby-sitting for Maria's children. The defendant baby-sat the children

approximately eight times in June 1988. On several of these occasions, the defendant was alone with the two girls.

On June 24, 1988, the defendant and Maria argued and the defendant left in an angry mood. After the defendant left, the victim, while lying on the floor, opened her legs and asked Maria to kiss her genitalia. Maria was surprised by the victim's behavior. On June 25, 1988, the defendant baby-sat for the victim and her younger sister while Maria went to work. The victim's older brother, Ryan, was away at camp that day. When Maria returned home from work, she and her daughters spent the remainder of the afternoon with the defendant at a house the defendant was remodeling.

Later that evening, Maria noticed that Nicole was pulling at her diaper and complaining of pain. She also noticed a bloody discharge in Nicole's diaper. She took her daughters to a doctor that evening and again the next day. On the basis of his examination of Nicole on June 26, the doctor notified the Department of Children and Family Services (DCFS) of a possible case of sexual abuse.

On June 27, the victim was interviewed by Officer Michael McNamara of the Park Forest police department and Jo Ann Deckman of DCFS. On June 28, Maria took both girls to Mount Sinai Hospital, which had a special program for evaluating cases of sexual abuse involving children. Maria and the girls stayed at the hospital for five days.

On June 30, Dr. Marisa Aguila performed an examination of the victim. Dr. Aguila diagnosed the child with hymenal trauma consistent with child abuse. During a subsequent child development interview with a counselor at Mount Sinai Hospital, the victim denied that she had been physically or sexually abused. Later, however, the victim made several statements indicating that she had

been sexually abused and implicating the defendant as the perpetrator of that abuse. The State sought to introduce these statements into evidence at the defendant's trial.

The trial court conducted a pretrial hearing to determine the victim's competency to testify. The court determined that the victim, who was four years old at the time of trial, was not competent to testify. The court next conducted a hearing pursuant to section 115—10 of the Code of Criminal Procedure (Ill. Rev. Stat. 1987, ch. 38, par. 115—10) to determine if the victim's statements could be admitted at trial as an exception to the hearsay rule. Following the hearing, the trial court ruled that the victim's mother, Maria, could testify at trial concerning statements which the victim made to her on July 1 and July 14, 1988. The trial court also determined that Cheryl Wolff, a therapist, could testify concerning certain statements that the victim made to her on July 14, 1988. These statements were admitted over the defendant's objection at trial.

Maria testified that she was getting the victim ready for bed on the evening of July 1, while they were staying at Mount Sinai Hospital. When Maria pulled the victim's underpants, the victim stated, "Don't do that." When Maria asked why, the victim answered, "Because Bart does that." Maria asked where Bart did that, and the victim responded, "Pull my pants." Maria then asked what else Bart did and the victim replied, "He put his lollipop in my cola." Maria testified that the victim then repeated that Bart put his lollipop in her cola and that he also put his tongue on her mouth and his tongue on her cola. Maria explained that "cola" was a ' Spanish term for "vagina," and that "lollipop" meant "penis." Later that evening the victim told Maria that Bart had put his tongue in her "privates" and hurt her. The vic-

tim also stated that Bart "put the lollipop in her mouth."

Maria also testified regarding statements the victim made to her on July 14. On that date, Maria took the victim to see Cheryl Wolff, a therapist. Prior to the visit with Wolff, Maria took the victim to the bathroom. While in the bathroom, the victim told her that Bart once "put her head in a toilet and flushed it." The victim could not breathe. The defendant told the victim not to tell her mother. The victim also informed Maria that when the defendant had put his "lollipop" in her "cola," he said, "I'm coming. I'm coming." Finally, she told her mother that the defendant made her "all wet" and "go potty."

Cheryl Wolff also testified regarding statements which the victim made to her on July 14. Wolff testified that, when she took the victim to the bathroom, the victim said, "He put my head in the toilet." Wolff asked who did that, and the victim responded, "Daddy." Wolff asked the victim, "Did Daddy put your head in the toilet?" The victim responded, "Daddy didn't do it, Bart did." The victim's older brother, Ryan, testified that he heard the defendant ask the girls to call him Daddy. Ryan also testified that he heard the girls refer to the defendant as Daddy on at least one occasion.

The defendant testified on his own behalf at trial. The defendant admitted that he baby-sat for the two girls on June 25, but stated that both girls "were fine." The defendant testified that he never sexually assaulted any of Maria's children. He also denied putting the victim's head in the toilet.

As stated, the court found the defendant guilty of aggravated criminal sexual abuse. The trial court estimated that the sexual abuse had occurred "approximately four weeks prior to June 24."

## I

The question for our consideration is whether the trial court properly admitted into evidence the victim's July 1 and July 14 statements to her mother concerning the sexual assault. The State first argues that the trial court properly admitted the statements pursuant to section 115—10 of the Code of Criminal Procedure (Ill. Rev. Stat. 1987, ch. 38, par. 115—10). The relevant parts of that section state:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13 ***, the following evidence shall be admitted as an exception to the hearsay rule:

***

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the *time, content,* and *circumstances* of the statement provide *sufficient safeguards of reliability*; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.)

In this case, the State, as the proponent of the evidence, bore the burden of proving that the "time, content, and circumstances" of the victim's statements provided "sufficient safeguards of reliability." (Ill. Rev. Stat. 1987, ch. 38, par. 115—10; see *Idaho v. Wright* (1990), 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139.) After carefully reviewing the record, we hold that the State did not ade-

quately establish that the victim's hearsay statements were reliable within the meaning of section 115—10.

We recognize, of course, that questions regarding the admissibility of evidence lie within the discretion of the circuit court. A reviewing court may overturn a trial court's determination only when the record clearly demonstrates that the court abused its discretion. (*People v. Franklin* (1990), 135 Ill. 2d 78, 96; *People v. Boclair* (1989), 129 Ill. 2d 458, 476.) The record here persuasively shows that the trial court abused its discretion in admitting the victim's hearsay statements pursuant to section 115—10.

As stated, hearsay statements are admissible under section 115—10 only if "the time, content, and circumstances of the statement provide sufficient safeguards of reliability." (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(b)(1).) Here, the *content* of the victim's statements tends to support their reliability. For example, the statements reflect a knowledge of sexual activity which is unexpected and unusual for a three-year-old child. In addition, the victim's statements to her mother and Wolff were consistent with each other and were made spontaneously, rather than in response to leading questions.

The *timing* and the *circumstances* surrounding the victim's allegations, however, fail to provide sufficient safeguards of their reliability. The *circumstances* surrounding the victim's statements are particularly troubling. Prior to making statements implicating the defendant, the victim was interviewed by at least three persons respecting the alleged sexual abuse (*i.e.*, a Park Forest police officer, a DCFS worker and a counselor at Mount Sinai Hospital). The State failed to introduce *any* evidence regarding the substance of these interviews. Without such evidence, it was impossible for the trial court to determine whether the victim was questioned in a suggestive manner or was encouraged to accuse the

defendant of sexual abuse. It was also impossible for the trial court to determine whether the victim's precocious knowledge of sexual activity was due to sexual abuse, as the State claims, or was the result of suggestive interview techniques.

Evidence as to what transpired during these interviews was particularly important here for two reasons. First, the victim's age made her particularly susceptible to suggestion from outsiders. Second, the defendant was unable to question the victim about the interviews at trial because the trial court found the victim incompetent to testify. A trial court should not presume from a silent record that suggestive interview techniques were not used. Careful consideration of the circumstances surrounding the victim's statements is particularly important in cases such as this, where the defendant does not have the opportunity to cross-examine the victim. The State, as the proponent of the challenged statements, bore the burden of establishing that the statements were reliable and not the result of adult prompting or manipulation. Here, the State failed to demonstrate that the circumstances surrounding the victim's statements support the reliability of those statements, as required by section 115–10.

Section 115–10 also specifies that the *timing* of the victim's statements must adequately safeguard the reliability of the statements. In this case, the trial court estimated that the sexual abuse occurred approximately four weeks prior to June 24. The victim's first statement to her mother was not made until July 1, approximately five weeks after the abuse occurred. In addition, the victim initially denied that she was sexually abused when a counselor at Mount Sinai Hospital questioned her. We recognize that victims of sexual abuse are often threatened not to tell anyone about the abuse, and that such threats may explain a child's delay in reporting abuse.

(See, *e.g., People v. Rushing* (1989), 192 Ill. App. 3d 444, 448.) In addition, our courts have recognized that child victims of sexual abuse are often reluctant to discuss the abuse with anyone other than their mothers. (See *People v. Hatfield* (1987), 161 Ill. App. 3d 401, 411.) Thus, as a general rule, delay in reporting abuse or initial denials of abuse will not automatically render a victim's statements inadmissible under section 115—10.

Here, too, the timing of the victim's statements, standing alone, does not make the statements unreliable. The victim's delay and initial denial become significant, however, when considered in light of the questionable circumstances surrounding her statements. We are particularly troubled by the fact that the victim made her statements only after substantial adult intervention. As noted above, the victim was interviewed by at least three persons before she even admitted that she was abused or implicated the defendant. Viewed together, the time and circumstances of the victim's statements do not "provide sufficient safeguards of reliability" as required by section 115—10. Accordingly, we must conclude that the trial court abused its discretion in admitting the statements pursuant to that statutory provision.

II

The State alternatively contends that the victim's statements were properly admitted under the common law "spontaneous declaration" exception to the hearsay rule. For a statement to qualify as a spontaneous declaration, three requirements must be met: " '(1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence.' " (*People v. Gacho* (1988), 122 Ill. 2d 221, 241, quoting *People v. Poland* (1961), 22 Ill. 2d 175, 181.) Here, the second requirement is not met and,

therefore, the victim's statements are not admissible as spontaneous declarations.

We recognize that "[t]he time factor is an elusive element and will vary with the facts of the case." (*People v. Shum* (1987), 117 Ill. 2d 317, 343.) In this case, however, the time lapse between the startling event and the victim's statements destroyed the spontaneity of her statements. As stated, the trial court determined that the sexual abuse occurred approximately four weeks prior to June 24. The victim's first statements regarding the abuse were made on July 1. A statement made approximately five weeks after the startling event cannot be said to be "made immediately after some exciting occasion" or "during the brief period when consideration of self-interest could not have been fully brought to bear." *People v. Damen* (1963), 28 Ill. 2d 464, 471.

The State argues that the time lapse may have been much shorter than five weeks. The State points out that the defendant was charged with committing acts of sexual abuse from March 15, 1988, until July 15, 1988, and that the State was not required to prove an exact date on which any one instance of abuse occurred. The State claims that the trial judge was only estimating when he determined that the abuse occurred approximately four weeks prior to June 24. It argues that the abuse may have occurred as late as June 25, when the defendant last baby-sat for the victim.

The trial court is entitled to weigh the evidence presented and to make findings of fact. This court will not disturb a trial court's finding unless that finding is contrary to the manifest weight of the evidence. (*Sexton v. Smith* (1986), 112 Ill. 2d 187, 194.) Here, the trial court's finding as to the approximate date on which the abuse occurred was not contrary to the manifest weight of the evidence.

Moreover, even if we were to accept the State's argument that the abuse occurred as late as June 25, the victim's statements would still not qualify as spontaneous declarations. A five-day interval between the startling event and the victim's statements would generally destroy the spontaneity of those statements. Indeed, the cases which the State cites have all involved a significantly shorter time interval between the startling event and the spontaneous utterances. (See, *e.g., People v. Nevitt* (1990), 135 Ill. 2d 423 (several hours); *People v. Shum* (1987), 117 Ill. 2d 317 (minutes); *People v. Bitler* (1986), 146 Ill. App. 3d 477 (within 24 hours).) More importantly, in this particular case, we are not simply confronted with a lengthy interval between the startling event and the statements. Here, the victim was interviewed at least three times before she made her first statement regarding the abuse. Our court has recognized that persistent questioning will destroy the spontaneity of a statement. (*People v. Lawler* (1991), 142 Ill. 2d 548, 560; *People v. Taylor* (1971), 48 Ill. 2d 91, 97.) Under the facts of this case, we hold that her statements cannot be said to fall within the spontaneous declaration exception to the hearsay rule. See *In re L.S.* (1989), 190 Ill. App. 3d 1031, 1034 ("Because of the \*\*\* intervening questions and events, we are unable to ascertain what prompted the victims' statements \*\*\* or to eliminate the probability of fabrication").

For the reasons expressed above, the judgment of the appellate court, reversing the defendant's conviction and remanding the cause for a new trial, is affirmed.

*Judgment affirmed.*

JUSTICE HEIPLE, dissenting:

I respectfully dissent from the majority opinion on two grounds. First, the majority decision does not correctly apply the standard of review in reaching its hold-

ing. Second, the majority opinion errs in its analysis of the requirements of section 115—10 of the Code of Criminal Procedure (Ill. Rev. Stat. 1987, ch. 38, par. 115—10).

This case involves the alleged sexual abuse of a three-year-old girl. The defendant, a 60-year-old man, baby-sat the victim, her nine-year-old brother, and her two-year-old sister. The victim was diagnosed with hymenal trauma consistent with sexual abuse. Prior to trial, the circuit court held a hearing and found the victim not competent to testify. Thereafter, the trial court conducted a hearing pursuant to section 115—10 to determine if certain out-of-court statements which the victim had made concerning the alleged sexual abuse could be admitted at trial as an exception to the hearsay rule. Following the hearing, the trial court found that based on its interpretation of section 115—10, the victim's mother could testify at trial concerning statements which the victim had made to her on July 1 and July 14, 1988. The trial court further found that Cheryl Wolff, a therapist, could testify concerning certain statements that the victim made to her on July 14, 1988. The trial court also excluded certain evidence and out-of-court statements that it found did not meet the requirements of section 115—10.

The mother testified that on July 1, 1988, when she pulled the victim's underpants in getting her ready for bed, the victim said, "Don't do that." When asked why, the victim responded, "Because Bart [the defendant] does that." The mother then asked the victim what else the defendant did and the victim answered, "He put his lollipop in my cola." According to the mother, the victim also said that "Bart *** put his tongue on her mouth—he put his tongue in her cola." The mother testified that "cola" is a Spanish term for vagina and "lollipop" meant penis. A few minutes later the victim reiterated that Bart had put his tongue on her "privates" and hurt

her and added that Bart "put the lollipop in her mouth." The mother also stated that on July 14, 1988, the victim told her that the defendant had put her head in a toilet and flushed it. Wolff testified that the victim additionally told her that the defendant had put the victim's head in the toilet. The victim further told her mother that when the defendant had put his "lollipop" in her "cola" he said, "I'm coming, I'm coming." The victim also told her mother that the defendant had made her "all wet" and "made her go potty."

In finding the defendant guilty of two counts of aggravated criminal sexual assault, the trial court stated that the "lynchpin of the evidence" against the defendant was the statements the victim made to her mother and Wolff which were admissible pursuant to section 115—10. Moreover, the trial court specifically stated that, while it did not believe all of the mother's testimony, it did believe the truth of the July 1 and July 14, 1988, out-of-court statements that the victim made to the mother.

In reversing the defendant's conviction, the appellate court stated: "We find that the statements are inadmissible because the *facts in the case at bar indicate* that there were insufficient safeguards of reliability with respect to the timing of the allegations and with respect to circumstances under which the allegations were made." (Emphasis added.) (208 Ill. App. 3d at 412.) In affirming the appellate court decision, the majority opinion states, "After carefully reviewing the record, we hold that the *State did not adequately establish* that the victim's hearsay statements were reliable within the meaning of section 115—10." (Emphasis added.) (151 Ill. 2d at 43-44.) Both the appellate court and the majority opinion misapplied the standard of review in examining the trial court ruling.

The sole issue presented by this appeal is whether the trial court clearly abused its discretion in admitting the out-of-court statements. The majority opinion, while paying lip service to the correct standard of review, goes on to merely substitute its judgment for that of the trial court. Likewise, the appellate court below in reaching its holding made a *de novo* factual determination. Rather than playing the role of trier of fact, this reviewing court is limited to addressing the following question: Was the trial court's determination that the out-of-court statements were sufficiently reliable as to time, content, and circumstances clearly contrary to the manifest weight of the evidence? The answer to this question is no.

Here, a rational trier of fact could have concluded that a five-week delay in the three-year-old victim's reporting sexual abuse is understandable given her fear of the defendant, who allegedly pushed her head into a toilet and told her not to tell her mother. Further, Illinois courts have consistently recognized that delay in reporting incidents of child sexual abuse is common, and any evidence of delay affects the weight rather than the admissibility of the evidence. (See *In re M.M.* (1988), 171 Ill. App. 3d 334 (where the court held that the approximately six-month delay affected only the weight, not the admissibility, of the victim's statements under section 115–10); *People v. Anderson* (1992), 225 Ill. App. 3d 636 (where the child had denied any sexual abuse when interviewed over 20 times over the course of a year by a mental health director).) Accordingly, the trial court, within its discretion, could have concluded that the victim's statements were sufficiently reliable as to timing.

Next, even the majority opinion finds that the content of the victim's statements tends to support their reliability. The victim gave consistent accounts of the sexual abuse to her mother on two occasions and the

victim's statements revealed a knowledge of sexual terminology unexpected for a three-year-old child. Additionally, the fact that the victim used Spanish terms in describing the sexual activity indicates that she was not merely repeating what an interviewer may have told her.

Finally, a rational trier of fact could have concluded that the circumstances surrounding the victim's statements provided sufficient safeguards of reliability. The victim's statements were spontaneous and were not in response to leading questions. The victim first admitted the sexual abuse to her mother, approximately five weeks after the sexual abuse occurred. Illinois courts have found that child victims of sexual abuse tend to repress the incident and will not likely discuss it with anyone but the mother. *People v. Hatfield* (1987), 161 Ill. App. 3d 401.

The majority opinion, in analyzing the circumstances surrounding the victim's statements, places great emphasis on the fact that the victim was interviewed by at least three persons before admitting that she was sexually abused and that the State failed to affirmatively demonstrate that the victim's statements were not the result of adult manipulation. The majority concludes that this "substantial adult intervention" forces the court to hold that the trial court abused its discretion in admitting the victim's out-of-court statements. The majority misconstrues the plain language of section 115—10. The statute simply requires the trial court to examine the totality of the circumstances surrounding a victim's statements to determine if they are reliable. Contrary to the majority holding, there is nothing in the statute which requires the State to affirmatively set forth the details of what transpired each time the victim was interviewed by an adult.

In summary, I find that the trial court's determination was not clearly contrary to the manifest weight of the evidence. Therefore, I dissent.

JUSTICE FREEMAN, also dissenting:

Because I believe the evidence shows that the trial court properly found that the child's unsolicited, out-of-court statements to her mother, Maria, and therapist Cheryl Wolff contained sufficient safeguards of reliability, I respectfully dissent.

In order for a child's out-of-court statement concerning an act of sexual abuse to be admitted at trial, section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—10) requires, *inter alia*, that the trial court first find that the time, content and circumstances of the statement "provide sufficient safeguards of reliability."

The majority finds that the content of the child's statements supports their reliability. As the majority points out, the child's statements to her mother and Wolff were consistent with each other, were made spontaneously rather than in response to leading questions, and reflected a knowledge of sexual activity which is unexpected and unusual for a three-year-old child. The majority, however, finds that the time and circumstances of the child's out-of-court statements fail to provide sufficient safeguards of their reliability. Thus, the majority holds that the State failed to satisfy the section 115—10 requirements.

Concerning the circumstances element, the majority notes that, before making the statements, the child was interviewed by a police officer, a Department of Children and Family Services (DCFS) worker, and a hospital counselor at Mt. Sinai Hospital, which had a special program for evaluating cases of child sexual abuse. The majority states, "A trial court should not presume from a

silent record that suggestive interview techniques were not used." (151 Ill. 2d at 45.) According to the majority, the State has failed to establish that the child's statements were not the result of adult prompting or manipulation, and the majority characterizes the circumstances surrounding the child's statements as "questionable." 151 Ill. 2d at 46.

The "questionable" circumstances to which the majority refers appear to be no more than that which is mandated by law. Pursuant to the Abused and Neglected Child Reporting Act (Act) (Ill. Rev. Stat. 1989, ch. 23, par. 2051 *et seq.*), the DCFS has the sole responsibility to receive and investigate reports of child abuse, except where investigations by other agencies may be required with respect to reports alleging, *inter alia*, sexual abuse. The DCFS may also delegate the performance of the investigation to a law enforcement agency as well as to designated private social service agencies. Ill. Rev. Stat. 1989, ch. 23, par. 2057.3.

I am troubled by the majority's seeming distrust of those professionals who are mandated by law to investigate allegations of child abuse. Child abuse investigations involving young children are particularly problematic. The investigation process is no doubt hampered by the young victim's limited language and cognitive skills. That notwithstanding, the investigating agents are charged with the responsibility, and expected, to obtain competent and sufficient evidence for the successful prosecution of an alleged child abuser. At the same time, the investigators must ascertain the nature and extent of the injury to the child in order to provide appropriate social and medical services. In light of this clear and weighty mandate, and in the absence of any supporting evidence, I can neither condone nor join in the majority's unwarranted characterization of the investigation process conducted by these professionals.

Moreover, section 115—10 requires only a finding that the time, circumstances and content of the statement provide *sufficient* safeguards of reliability. The statute does not require the State to present and to discount every factor which *might* have influenced the child victim's statements. Undoubtedly, given the age and early developmental stage of this child, in order for the investigators to elicit the necessary information, they most likely engaged in an interactive, prompting interview approach. However, even if leading questions were used, if appropriate, that fact does not necessarily render their responses untrustworthy. *Idaho v. Wright* (1990), 497 U.S. 805, 818, 111 L. Ed. 2d 638, 654, 110 S. Ct. 3139, 3148, citing J. Myers; Child Witness Law & Practice §4.6, at 129-34 (1987).

I also disagree with the majority's statements that the trial court was unable to determine whether the child was questioned in a suggestive manner and encouraged to accuse the defendant of sexual abuse, or that the child's knowledge of sexual activity was due to sexual abuse or was the result of suggestive interview techniques.

Other than the fact that the legally mandated child abuse investigation occurred and that a hospital counselor also interviewed the child, the majority fails to point to any evidence to support even a presumption that suggestive interview techniques were used. Unless we are to believe that the investigating agents had some interest in seeing this defendant prosecuted, I believe it to be a safe assumption that the person most likely to encourage the child to accuse this defendant was the child's mother. The mother was available and testified during pretrial proceedings and at trial. Any improper influence on her part could have been determined from her testimony.

Further, I believe that the unique terminology used by the child to describe the events, as well as the extensiveness of her statements, could properly guide the trial court in its determination on the issue of suggestiveness. Unless, of course, we are to conclude that this unique terminology was used by the DCFS worker, the police officer or the hospital counselor, during their various encounters with the child, in some attempt to elicit a statement from the child. Absent some contrary evidence, the fair presumption is that the investigation was not inappropriately suggestive.

I recognize that the position which the majority here takes is not a matter of judicial indifference to the protection of children, but is rather an effort to maintain fairness and objectivity in the administration of justice. However, in its attempt at fairness and objectivity, the majority unfairly casts a shadow of suspicion and distrust on the child protective services process and effectively sets up barriers to thorough child abuse investigations.

The majority also finds that the timing of the victim's statements, when viewed with the circumstances surrounding the statements, fails to provide sufficient safeguards of reliability as required by section 115—10. The majority acknowledges that the child's delay in reporting the abuse did not render the statements unreliable. The majority even recognizes that a failure to report the abuse may be the result of feelings of fear and reluctance. The sole factor which the majority finds fatal to satisfaction of the time element is that the child made her statements "only after substantial adult intervention." 151 Ill. 2d at 46.

I believe it to be without dispute that there is great disparity in the level of mental and intellectual functioning of a three-year-old child as compared to that of an adult, or even to that of an older child. I further believe

that it does not require particularized training in the area of childhood development to recognize that a child of three is limited in her perceptions by her life experiences. Thus, I question the ability of a child of such young age, despite precociousness, to even comprehend the nature of sexual abuse, much less the accompanying sense of victimization which usually prompts, in an older person, an immediate, unsolicited report of the incident.

The event which triggers a three-year-old to relate an incident which constitutes sexual abuse differs quite decidedly from that of an older person who is readily able to perceive the impropriety of such conduct and report the offense without prompting. I applaud the majority's recognition of the impact which fear and reluctance may have on a child's motivation to report allegations of sexual abuse. However, to attribute fear and reluctance to a three-year-old's delay in relating the abuse erroneously presumes that the child, in the first place, even perceives that she has been victimized. In this instance, the mere fact that there was "substantial adult intervention" would not defeat the reliability of the child's statement.

In discussing the rationale which underlies the theory of the hearsay rule, the United States Supreme Court in *Idaho v. Wright* (1990), 497 U.S. 805, 819, 111 L. Ed. 2d 638, 655, 110 S. Ct. 3139, 3148-49, stated that the safeguards of reliability must be shown from the totality of the circumstances surrounding the making of the statement which deem the person making the statement particularly worthy of belief. The most significant circumstance in consideration of this three-year-old child's statement is her young age.

Because I believe that the trial court properly exercised its discretion in finding, from the totality of circumstances surrounding the child-victim's statements, that the child was particularly worthy of belief, I would affirm the trial court's admission of the statement.