THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. SCOTT E. PANIER, Defendant-Appellee.

Third District    No. 3—93—0369

Opinion filed March 8, 1994.

Donald D. Knuckey, State's Attorney, of Lacon (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Eric S. Swartz, of Henry, for appellee.

JUSTICE BARRY delivered the opinion of the court:

The State brings this interlocutory appeal from orders of the circuit court of Marshall County granting a motion *in limine* in favor of defendant Scott E. Panier, the effect of which precludes admission of the victim's hearsay statements, and denying the State's motion for reconsideration. For reasons that follow, we affirm.

According to the record before us, defendant was charged with aggravated criminal sexual assault (720 ILCS 5/12—14(b)(1)) and aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(2)) of L.H., the minor female victim. At the time of the alleged offense—on or about July 29, 1992—L.H. was four years old, and defendant, whose birthday is July 3, was 16 or 17 years old. Defendant moved for a determination of witness competency. The court heard the motion on October 5, 1992, and found L.H. not competent to testify. Defendant then moved *in limine* to preclude admission of the child's hearsay statements to Henry Chief of Police Glen Killen and Department of Children and Family Services (DCFS) investigator Patrick Dittmar pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—10 (West 1992)).

At the hearing on defendant's motion, Dittmar testified that he and Killen had interviewed L.H. on August 11, 1992, after having received a report of sexual molestation filed by Gail Handley, L.H.'s mother, on August 10. Dittmar stated that before broaching the subject of sexual molestation, he attempted to ascertain if L.H. knew the difference between the truth and a lie. He said that L.H. "had difficulty with that." Dittmar explained that, for example, when he held up his pen and asked L.H. if he said that it was a baseball bat, would it be the truth or a lie, she said it was a truth. He then asked her if she knew the difference between a good touch and a bad touch. L.H. said a good touch was like a pat on the arm and a bad touch was like a hit. He then showed her an anatomically correct doll and asked her to identify body parts. L.H. correctly named the facial

parts and called the breasts "boobs," the vagina a "pee pee" and the anus a "butt." Dittmar told L.H. that these latter parts collectively were called "privates." He then asked L.H. if anyone had touched her. She responded that "Scott" did. Upon further questioning, L.H. explained that Scott was a big person who lived with "Sharon," L.H.'s day care babysitter and Scott's mother. She said that Scott had been in his bedroom, he had touched her "boobs," her "pee pee" and her "butt" with his finger, and that he had pulled down his pants and "peed" on the bed. Upon further questioning, L.H. said that Scott had also touched her with a stick, that he had touched her a lot— about five times—and that it had happened a long time ago and that he had also touched her baby sister, Hope, with the stick, "peed" on their heads and made her, L.H., touch his "pee pee" and lick it. According to Dittmar, L.H. then wanted to draw, so he asked her if she could draw a picture of Scott's "pee pee." Dittmar testified that the illustration was a remarkably accurate depiction of a penis. On cross-examination, Dittmar stated that L.H. also told him that Scott's sister, Carrie, had licked her "pee pee" and "butt." Finally, Dittmar testified that he was aware that a medical examination report revealed no evidence of bruising or sexual molestation.

Gail Handley also testified at the hearing. She said that she had observed something like a "fuzzy" black hair on L.H.'s vagina on the morning of August 10. Handley asked L.H. about it, and L.H. responded, "Chelsea messes with me." Handley explained that Chelsea was a $1^1/2$-year old baby that L.H. knew only from day care at Sharon's home. Because L.H. had earlier complained that she did not want to sit on Scott's lap, Handley asked L.H. whether Scott had "messed" with her. L.H. said yes, he had "touched" her "down below." L.H. made no mention of a stick or of any abuse by Carrie. When Handley reported the conversation to the police, she also explained that L.H. had complained of molestation two years earlier at day care by an 11-year-old boy. This incident was investigated by DCFS and determined to be unfounded and was not discussed with L.H. in connection with the current charges. Handley further testified that after Dittmar's interview with L.H., he discussed with Handley L.H.'s allegations involving Carrie and the stick. Handley subsequently, on August 12, 1992, asked L.H. about Carrie and the stick, whereupon L.H. denied that Carrie had poked her with a stick. According to Handley, L.H. said she was "kind of confused" and, "Maybe I just tell stories." A couple of months later, Handley attempted to talk to L.H. about the incident and L.H. said that she didn't want to talk about it and maybe it didn't happen. Handley also testified that L.H. would have had no occasion to observe a penis

in her home. On cross-examination, Handley testified that when L.H. had attended the prior day care there had been between 13 and 16 boys and girls in that home and that there was only one bathroom in the house.

At the conclusion of the State's evidence, the court granted defendant's motion *in limine* to preclude admission of the victim's hearsay statements. The State filed a certificate of impairment and perfected its interlocutory appeal. The issue before us is whether the trial court abused its discretion by refusing to admit L.H.'s hearsay statements pursuant to the statutory exception for acts on children under age 13 (725 ILCS 5/115—10 (West 1992)).

Pursuant to section 115—10 of the Code of Criminal Procedure of 1963

> "the following evidence shall be admitted as an exception to the hearsay rule:
> ***
> 2) testimony of an out of court statement made by [the child victim] describing any complaint of [a sexual act] or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.
> b) Such testimony shall only be admitted if:
> 1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and
> 2) The child either:
> A) Testifies at the proceeding; or
> B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." 725 ILCS 5/115—10 (West 1992).

In this case, the State charged defendant with an act of placing his penis in the child victim's mouth. In his motion *in limine* to exclude the hearsay statements, defendant asserted that there was no corroborative evidence of the act and that the time, content and circumstances of the statements failed to demonstrate sufficient particularized guarantees of trustworthiness to be admissible. The trial court agreed on both bases.

In its appeal, the State reviews the testimony admitted at the hearing and argues that the court erred by overemphasizing the negative aspects relative to reliability of the hearsay statements and denigrating the indicia of their reliability. The State also alludes to a confession allegedly made by defendant that allegedly would serve as corroborative evidence of the sexual act. Defendant, citing *People v. Ward* (1991), 207 Ill. App. 3d 365, 565 N.E.2d 740, argues that the

State's failure to produce any testimony or other evidence supporting the fact of a confession at the section 115—10 hearing is fatal to its position. In the alternative, defendant argues that even if the State's Attorney's allusion to a confession, standing alone, would satisfy the statute's requirement of corroboration, the trial court's assessment of factors relative to time, content and circumstances of the hearsay statements establishes that the court did not abuse its discretion in denying their admission on the ground of nonreliability.

In our opinion, *Ward* is directly on point and requires that the State produce corroborating evidence at the pretrial hearing. In *Ward*, the defendant was charged with aggravated criminal sexual assault of two girls, ages four and five. After a hearing on competency, the court ruled that both children were incompetent to testify. Defendant then, as here, filed a section 115—10 motion *in limine* to preclude admission of hearsay statements made by the girls to their foster mother and a DCFS investigator. At the hearing on defendant's motion, the prosecutor presented testimony of the foster mother and the investigator, and the prosecutor made an offer of proof that defendant's stepson would testify that he was an eyewitness to the acts allegedly committed by the defendant. (207 Ill. App. 3d at 369, 565 N.E.2d at 742.) At the conclusion of the hearing, the court found that although the statements contained sufficient safeguards of reliability, the motion *in limine* should be granted because the State had failed to produce its corroborative evidence at the hearing.

On appeal, this court affirmed. We ruled "that where the declarants are unavailable, the above-quoted language [of section 115—10] requires the State to present actual corroborative evidence at the pretrial hearing, outside the presence of the jury. [Citation.] *** [T]he statute contemplates that the State actually call the witness to testify at the pretrial hearing and not simply rely on the prosecutor's representations about what [a] witness would testify to if called." 207 Ill. App. 3d at 369, 565 N.E.2d at 742-43.

In this case, the prosecutor alluded to a confession in orally resisting the court's decision at the conclusion of the section 115—10 hearing. Specifically, the prosecutor stated, "There is a confession, Judge. Oh, yes. But the Court can't take that into consideration at this hearing." Neither an offer of proof nor any testimony as to the existence of such alleged confession was presented. Accordingly, the court properly ruled that the State's failure to present any corroborative evidence of the alleged sexual act rendered the hearsay exception unavailable.

Because this case is brought on an interlocutory basis, we have reviewed as well the parties' arguments respecting the trial court's

finding that the time, content and circumstances of the hearsay statements lacked sufficient safeguards of reliability to be admissible. As recently noted by our supreme court in *People v. Zwart* (1992), 151 Ill. 2d 37, 43, 600 N.E.2d 1169, 1171-72, "the State, as the proponent of the evidence, bore the burden of proving that the 'time, content, and circumstances' of the victim's statements provided 'sufficient safeguards of reliability.' (Ill. Rev. Stat. 1987, ch. 38, par. 115—10; see *Idaho v. Wright* (1990), 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139.)" In *Zwart*, as here, the victim, Nicole, was of a tender age (four years old at the time of trial) and found not competent to testify. Hearsay statements Nicole made to her mother concerning alleged acts of sexual abuse between April and June 25, 1988, were elicited by the mother based on observations she made on July 1 and prior to a visit with a therapist on July 14, 1988. The statements conflicted with Nicole's denials of any abuse when she was given a medical examination on June 30. The trial court ruled the statements admissible, and defendant was found guilty of aggravated criminal sexual abuse. The conviction was reversed on appeal, and the supreme court granted the State's petition for leave to appeal.

In evaluating the factors of reliability, the supreme court observed that, although the child's delay alone would not make the statements unreliable, the victim's initial denial coupled with the fact that the statements followed substantial adult intervention made the delay significant. The court concluded that, "[v]iewed together, the time and circumstances of the victim's statements do not 'provide sufficient safeguards of reliability' as required by section 115—10." Accordingly, the court found that the trial court had abused its discretion in admitting the statements pursuant to the statutory exception. 151 Ill. 2d at 46, 600 N.E.2d at 1173.

We have considered as well our supreme court's opinion in *People v. West* (1994), 158 Ill. 2d 155, cited by the State, but find that case distinguishable on several bases. In *West*, the seven-year-old victim, S.W., implicated the defendant immediately to family members after the abuse and was interviewed by Officer Henriquez within hours of the incident. S.W.'s statements concerning the abuse were not undermined by inconsistent versions. Her language was appropriate for her age. There was no suggestion of prompting during the investigative interview, and S.W. had no motive to fabricate. The trial court denied defendant's section 115—10 motion *in limine* to exclude the officer's hearsay testimony, finding them sufficiently reliable to be admissible at trial. Defendant's written statement was also determined to be admissible. At trial, S.W. testified against the defendant, and he was convicted of two counts of aggravated sexual

abuse. On review our supreme court affirmed, finding no abuse of the trial court's discretion in its determination of the admissibility of the hearsay statements. (158 Ill. 2d at 164-65, citing *People v. Zwart* (1992), 151 Ill. 2d 37.) For our purposes today, we do not find *West* sufficiently factually analogous to merit further consideration.

In the present case, we believe that the trial court's decision to deny admission of L.H.'s hearsay statements was not an abuse of discretion. As in *Zwart*, the victim's initial statements were not spontaneous, but the product of the mother's inquiry and suggestion approximately 12 days after the alleged act of abuse. In the subsequent interview with DCFS investigator Dittmar, L.H.'s statement was significantly amplified, including allegations of abuse by a 1¹/₂-year-old baby and defendant's sister. Upon further probing by her mother, L.H. recanted the new allegations and then suggested that she told "stories." While we do not wish to fault the techniques of investigator Dittmar in conducting his interview, we believe that the circuit court could well have concluded that the content of the child's statements were tainted by the circumstances of the mother's initial conversation.

Thus, as in *Zwart*, we believe that L.H.'s delay in reporting took on greater significance as a detractor in the reliability analysis since both the content of the statements to Dittmar and the circumstances of the mother's initial interview raised troublesome questions about their reliability. Accordingly, we do not hesitate to affirm the trial court's conclusion that the State failed to prove that the time, content and circumstances of L.H.'s hearsay statements provided "sufficient safeguards of reliability" to be admitted pursuant to section 115—10.

We affirm the order of the circuit court of Marshall County granting defendant's motion *in limine*.

Affirmed and remanded.

SLATER, P.J., and STOUDER, J., concur.