THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. TODD J. WARE, Defendant-Appellee.

Fourth District   No. 4—93—0018

Argued February 22, 1994.—Opinion filed March 31, 1994.

Scott H. Walden, State's Attorney, of Quincy (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel D. Yuhas and Jeffrey D. Foust (argued), both of State Appellate Defender's Office, of Springfield, for appellee.

JUSTICE GREEN delivered the opinion of the court:

This case turns upon the operation of the exception to the hearsay rule created by section 115—10 of the Code of Criminal Procedure of 1963 (Procedural Code), which states, in most pertinent part, as follows:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code

of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out[-]of[-]court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out[-]of[-]court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." 725 ILCS 5/115—10 (West 1992).

On September 8, 1992, an information was filed in the circuit court of Adams County charging defendant Todd J. Ware with aggravated criminal sexual assault and aggravated criminal sexual abuse in violation of sections 12—14(b)(1) and 12—16(c)(1)(i) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/12—14(b)(1), 12—16(c)(1)(i) (West 1992)). The alleged victim of the offenses was S.M.C., a three-year-old girl. Other charges not important here were also filed.

On December 29, 1992, the State filed a motion pursuant to section 115—10(b) of the Procedural Code seeking a determination that statements made by S.M.C. to her mother, A.C., and Dina Roberts, a police officer, had sufficient reliability to be admissible in evidence as required by section 115—10(b)(1) of the Procedural Code. After an evidentiary hearing, the circuit court denied admissibility, thus, in effect, suppressing the statements and rendering its order appealable to this court (134 Ill. 2d R. 604(a)(1)). The State then filed a certificate of impairment and appealed. We affirm the denial of the admissibility of statements made by S.M.C. to Roberts, but vacate the denial of admissibility of the statements made to A.C. We remand for further proceedings in regard to the latter statements.

The section 115—10(b)(1) hearing began with a questioning of S.M.C. to determine if she could qualify as a competent witness. She responded to questions by the State, the defense, and the court by nodding or shaking her head yes or no. She did not know how to count, the color of her shirt, or what it meant to tell the truth, a lie, or a promise. The parties agreed S.M.C. was not competent to testify,

and the court found her to be unavailable due to incompetence and inability to communicate. The hearing then proceeded with testimony by A.C. concerning statements made to her by S.M.C., testimony of Robert Copely, a police officer, concerning an interview of S.M.C. by Roberts, and a tape which was made concerning that interview.

A.C. testified as follows: (1) she is the mother of S.M.C., who was born on September 6, 1989; (2) she and S.M.C. had been living with defendant for approximately three months at the time of the incident, which she described as having taken place in late August or early September 1992; (3) she was attending night classes at a community college five nights per week while Todd baby-sat for S.M.C.; (4) on the day of the alleged incident, she returned from class at approximately 9 p.m., and S.M.C. came running from her bedroom; (5) S.M.C. said that Todd had "bonged" her head on the floor and that she had "peed" on the couch a little; (6) Todd was present in the room when S.M.C. related these events and said they were playing when S.M.C. hit her head; (7) she checked the couch and discovered it was a little wet, but Todd indicated S.M.C. had not made it to the bathroom because they were playing; (8) she said S.M.C. did not often fail to make it to the bathroom; (9) approximately one hour later, S.M.C. came to A.C. and told her Todd had pulled down his underwear and "stuck his pee-pee down there," pointing to her "private area"; and (10) S.M.C. did not provide any other details, and defendant, who was present when she said this, stated "you know how she makes up her stories." A.C. let S.M.C.'s father take her the next day for visitation for a few days.

Robert Copely, a police officer who worked as a "youth investigator" for the Quincy police department, testified he was involved in the investigation of the sexual abuse report against defendant. He said he was advised that a victim of a domestic violence was reporting her daughter was a possible victim of child abuse. He took a statement from A.C. and witnessed parts of the interview of the child, which was conducted by Investigator Dina Roberts.

He observed the interview, which was audio and videotaped, through a two-way mirror on September 4, 1992. He stated S.M.C.'s mother and father were at times present during different parts of the interview, and other times, S.M.C. and Roberts were alone in the room. He noted the participants took a break during the taping, but he did not know how long the break lasted, or whether any discussion was had outside the room.

The videotape was played for the court. A transcript of the tape, which lasted approximately 40 minutes, was not made.

A review of the tape indicates S.M.C. was unable to express

herself clearly. She had just had her third birthday two days before the interview, and she obviously did not want to be there. She kept asking if she could leave, and Roberts said she could not leave until she told her what Todd did to her the other day (approximately eight days earlier). S.M.C. repeatedly said she did not know what happened. She also was inconsistent and contradicted herself many times.

Roberts repeatedly asked S.M.C. "what did Todd do to you the other day?" In addition, contrary to the State's assertion that most of the questions were open-ended, she also made statements such as "what Todd did was wrong," "Todd was a bad boy," "Todd shouldn't have touched you," "did Todd take your pajamas off?" and "did Todd take your clothes off the other day?" She also stated, in succession, "we don't want Todd to touch [S.M.C.] like that anymore. We don't want Todd to touch you there. That's why we need to know now if he touched you there." She told S.M.C. "show me what Todd did and we'll leave." Finally, after more than 40 minutes (they took a break during the interview for an unspecified time), S.M.C. took a male anatomically correct doll and held it to her genital area and said "Todd put his pee-pee down here." The interview was then stopped.

In *Idaho v. Wright* (1990), 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139, the United States Supreme Court set forth the requirements the confrontation clause imposes upon the admissibility into evidence of hearsay statements incriminating an accused, when the statements do not fall into a firmly rooted common law hearsay exception. That Court concluded that "unless an affirmative reason, arising from the circumstances in which the statement was made, provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the out-of-court statement" and that no "mechanical test" existed for determining whether the hearsay should be excluded. (*Wright*, 497 U.S. at 821-22, 111 L. Ed. 2d at 656, 110 S. Ct. at 3150.) In *People v. Deavers* (1991), 220 Ill. App. 3d 1057, 1069, 580 N.E.2d 1367, 1375, we held the test set forth in *Wright* was the test required by section 115—10(b)(1) of the Procedural Code, and the determination must be made by an examination of "the totality of the circumstances surrounding a victim's statements."

In *People v. Zwart* (1992), 151 Ill. 2d 37, 44, 600 N.E.2d 1169, 1172, the court held that a determination of a circuit court to suppress or admit hearsay testimony under section 115—10 of the Procedural Code should be overturned on review only if the ruling was a breach of discretion. We examine the two rulings of the circuit court on that basis.

●1 Our decision in regard to the suppression of the taped

statement is an easy one. The *Wright* Court pointed out that a suggestive manner of questioning by the witness to a hearsay statement (conduit of the statement) is a circumstance negating reliability of the statement. (*Wright*, 497 U.S. at 826, 111 L. Ed. 2d at 659, 110 S. Ct. at 3152.) In *Zwart*, the Supreme Court of Illinois upheld an appellate court's ruling excluding statements taken from a child who was an alleged victim of a sex offense during an interview because an insufficient showing had been made that suggestive questioning had not occurred. Here, the suggestive questioning shown upon the tape fully justified the circuit court's determination to deny admittance of that evidence.

The situation concerning the exclusion of the statements allegedly made by S.M.C. to A.C. is more complicated. No indication of suggestive questioning was shown. The alleged statements were stated to have been made on the same evening as the offenses allegedly occurred. Although S.M.C. had seen A.C. and defendant engaging in intercourse, little reason existed for S.M.C. to fabricate what she related that defendant had done. (*Wright*, 497 U.S. at 821-22, 111 L. Ed. 2d at 656-57, 110 S. Ct. at 3150.) However, the trial judge indicated that a factor in his decision to exclude these statements was that he doubted A.C.'s veracity. The judge stated: "I have judged [A.C.'s] credibility while she was on the witness stand *in terms of these statements being made*." (Emphasis added.)

■ Our concern with the circuit judge's explanation for his ruling is that it indicates he excluded the evidence because he did not believe A.C.'s testimony that S.M.C. made the statements attributed to her. If this were so, he would not be ruling upon the reliability of S.M.C.'s statement but upon the reliability of A.C., the conduit of the hearsay statements. Section 115—10(b)(1) of the Procedural Code sets forth that the factors providing a foundation for the admission of the evidence of a statement concerns "the time, content, and circumstances of the statement" and the extent to which it "[provides] safeguards of reliability." Nothing is said about determining whether the statement was made.

Section 115—10.1 of the Procedural Code, in providing for admission into evidence of prior inconsistent statements of witnesses for purposes other than impeachment, states as follows:

"In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—

(1) was made under oath at a trial, hearing, or other proceeding, or

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

(A) the statement is proved to have been written or signed by the witness, or

(B) the witness acknowledged under oath the making of the statement either in his testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought, or at a trial, hearing, or other proceeding, or

(C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording.

Nothing in this Section shall render a prior inconsistent statement inadmissible for purposes of impeachment because such statement was not recorded or otherwise fails to meet the criteria set forth herein." (725 ILCS 5/115—10.1 (West 1992).)

The foregoing requires that the statement "be proved to have been written or signed by the witness," acknowledged under oath in certain proceedings or "proved to have been accurately recorded" in certain ways. Section 115—10.1 of the Procedural Code clearly indicates a legislative intention that only certain formal and easily proved types of prior inconsistent statements be admitted generally. Essentially, section 115—10.1(c) of the Procedural Code reflects the legislature's concern that the hearsay statement at issue *was actually made*. Had the legislature intended a similar restriction for statements admitted under section 115—10 of the Procedural Code—a section enacted several years after the enactment of section 115—10.1— the legislature would surely have so stated, but it did not do so.

We are unaware of any common law rule which requires the court to make a determination of whether an alleged hearsay statement was actually made before permitting evidence of that statement to be presented to the trier of fact. One obvious reason why that is so in criminal cases is that the question of whether the statement was made presents no confrontation problem. The conduit of the statement testified from firsthand knowledge as to the utterance of the statement and is subject to cross-examination in that regard. The conduit is the witness against the accused to that extent, and the trier of fact properly determines whether the statement was made.

Confrontation problems arise in the making of the determination

as to whether the statement is true. *Wright* and section 115—10 of the Procedural Code deal with the determinations concerning the circumstances of the making of the statement which must be made by the court before the statement can be properly considered by the trier of fact. That was the determination which should have been made by the trial court here in regard to the alleged statements of S.M.C. to A.C.

Accordingly, we conclude that the trial court erred if it excluded the testimony of the alleged statements of S.M.C. to A.C. on the basis it did not believe the statements were ever made. However, A.C. was the only witness laying a foundation as to the "time, content, and circumstances" of the statements, and if the court disbelieved her on these factors, it could properly exclude the testimony. The trial court heard the witness and observed her demeanor and manner while on the stand. We would overturn its decision, if based upon a proper standard, if it breached its discretion. (*Zwart*, 151 Ill. 2d at 44, 600 N.E.2d at 1172.) Had the circuit court concluded that it was excluding A.C.'s statements because of lack of proof of circumstances giving reliability to the statements related by S.M.C., that decision could stand.

The State argues that S.M.C.'s statements to A.C. qualify under the spontaneous declaration exception to the hearsay rule, but that contention has been raised for the first time on appeal and has been waived. However, the State did not waive another significant issue. Section 115—10(b) of the Procedural Code requires that where, as here, the hearsay declarant was unavailable, corroborative evidence must be shown before the statement can be introduced. The record indicates that the State purported to have corroborative evidence available, but the parties proceeded upon the basis that evidence would be useless because the court was suppressing the evidence before proceeding to that point.

Accordingly, we affirm the exclusion of the taped hearsay statements. We vacate the suppression of the statements of S.M.C. to A.C. and remand that issue to the circuit court. That court must then determine whether the basis of its decision on the statements to A.C. was the lack of reliability in the statements or a disbelief that the statements were uttered. If the determination is that the statements lack reliability, the court should reinstate its order of exclusion. If the court's determination had been based upon its disbelief of A.C. as to the existence of the statements, it should proceed under section 115—10(b) of the Procedural Code to hear evidence of corroboration and rule accordingly.

Affirmed in part; vacated in part and cause remanded with directions.

LUND and STEIGMANN, JJ., concur.